

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MOUSA MOHAMMED ABU MARZOOK
  a/k/a "Abu Omar,"
  a/k/a "Tareq,"
  a/k/a "Abu Rizq,"
MUHAMMAD HAMID KHALIL SALAH,
  a/k/a "Muhammad Abd Al-'Hamid Salah,"
  a/k/a "Abu Ahmad," and
ABDELHALEEM HASAN ABDELRAZIQ ASHQAR,
  a/k/a "Abu Hasan,"
  a/k/a "Abu Ali Hasan,"
  a/k/a "Samir"

No. 03 CR 978

Judge Amy J. St. Eve

Violations: Title 18, United States Code, Sections 2, 401(3), 1503, 1962, and 2339B

**Second Superseding Indictment**

**FILED**
AUG 19 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**
AUG 27 2004

## COUNT ONE

The SPECIAL AUGUST 2003-2 GRAND JURY charges:

1.    At times material to this indictment:

### THE ISLAMIC RESISTANCE MOVEMENT ("HAMAS")
#### (*"Harakat al Muqawama al Islamiyya"*)

A.    From at least as early as 1988 and up until the date of the filing of this indictment, there existed an international organization known as *Harakat al Muqawama al Islamiyya*, which translates as the Islamic Resistance Movement and is commonly referred to as "Hamas." Hamas has, among its publicly stated purposes, the establishment of a Palestinian/Islamic state in the lands that comprise the State of Israel ("Israel") and the West Bank and Gaza Strip, including Jerusalem.

B. Hamas has pursued the objective of a Palestinian/Islamic state by fostering support among Palestinians through community building activities in the West Bank and Gaza Strip. The

*59*

West Bank and Gaza Strip are disputed territories often referred to as the Occupied Territories. While Hamas has undertaken social welfare activities, in order to obtain its objective it has also engaged in numerous terrorist attacks aimed at Israeli military personnel, police officers and civilians. These terrorist activities, for which Hamas has repeatedly and publicly claimed credit, have as their broadly represented purpose the undermining of the Israeli-Palestinian peace process, and, more generally, forcing the State and citizens of Israel to cede physical and political control over the lands comprising Israel, the West Bank, and the Gaza Strip, and replacing the Israeli political authority over these lands with an Islamic government. In or about 1988, Hamas published a charter calling for such violent terrorist attacks. According to the Hamas Charter, the means of confronting the "usurpation of Palestine by the Jews" is proclaimed to be *"jihad"* (holy war). Hamas defines *jihad* as violent activities with such violent activities being carried out by Hamas's so-called military wing, commonly known as the Izz Al-Din Al-Qassam Brigades ("Al-Qassam Brigades").

C. Hamas has maintained offices throughout the world, including headquarters in Damascus, Syria. In addition, Hamas has maintained a world-wide network of members who donate money to support the goals of Hamas. Much of the fundraising was done by and through individuals as well as various non-profit organizations that collect money.

D. Hamas has included members and affiliated organizations situated throughout the United States. Hamas's members and affiliated organizations in the United States have served two primary purposes: (1) recruitment of members and donors to Hamas; and (2) financing directly and indirectly the activities of Hamas including the terrorist activities carried out by the Al-Qassam Brigades.

E. Hamas has been comprised of various committees or bureaus, including among

2

others, a political committee, a military committee, and a social/charitable committee, all of which worked together to achieve the goals of Hamas.

F. Hamas placed members of its leadership in countries in the Middle East and elsewhere, with these leaders being referred to by members of Hamas as the "outside," while Hamas also maintained leadership members, cells and committees inside the West Bank and Gaza Strip, with these elements being referred to by members of Hamas as the "inside."

G. On January 24, 1995, pursuant to Executive Order 12947, the Department of Treasury, Office of Foreign Assets Control, designated Hamas as a Specially Designated Terrorist organization. This designation makes it illegal for any United States person or entity to engage in any unlicensed transactions or dealings involving the property or interests of Hamas. Hamas's designation as a Specially Designated Terrorist organization has remained in place since January 24, 1995.

H. On October 8, 1997, the Secretary of State, pursuant to the laws of the United States, designated Hamas as a "foreign terrorist organization." As a result of this designation, it became illegal for any person within the United States or subject to its jurisdiction to provide material support or resources to Hamas. Because "foreign terrorist organization" designations lapse every two years unless renewed, Hamas has been redesignated three times as a "foreign terrorist organization," most recently on October 2, 2003.

## DEFENDANTS

I. Defendant MOUSA MOHAMMED ABU MARZOOK, a/k/a "Abu Omar," "Tareq," and "Abu Rizq," is a member of Hamas. ABU MARZOOK formerly held the position of Chief of the Hamas Political Bureau. He presently lives in Damascus, Syria, and is the Deputy Chief

3

of the Hamas Political Bureau. The Political Bureau functioned as the highest ranking leadership body in the Hamas organization, setting policies and guidelines regarding Hamas's activities, including directing and coordinating terrorist acts by Hamas and the Al-Qassam Brigades. From in or about 1988 until in or about February 1993, while living in the United States, ABU MARZOOK coordinated and financed the activities of Hamas within the United States and elsewhere, first from Louisiana and then from Northern Virginia. During that period, ABU MARZOOK traveled throughout the United States to meet with other American-based Hamas members, as well as foreign-based Hamas members traveling to the United States for organizational purposes. ABU MARZOOK additionally maintained constant phone contact with Hamas membership and leadership in the United States and abroad. During this time period, ABU MARZOOK also maintained and shared numerous bank accounts through which substantial sums of money were transferred from bank accounts located outside the United States to other accounts within the United States, including bank accounts controlled by or associated with defendant MUHAMMAD HAMID KHALIL SALAH, for ultimate disbursal to accounts and individuals outside the United States for use in furtherance of Hamas.

J. MUHAMMAD HAMID KHALIL SALAH, a/k/a "Muhammad Abd Al-'Hamid Salah," and "Abu Ahmad," was a member of Hamas who lived in or around Chicago. Between in or about 1989 and in or about January 1993, SALAH traveled throughout the United States and to London, England, Israel and the West Bank and Gaza Strip on behalf of Hamas, meeting with Hamas representatives as well as leaders and members of the Al-Qassam Brigades, recruiting and training new members of Hamas in the United States, and disbursing money from the United States to directly support Hamas members and activities of Hamas and the Al-Qassam Brigades. In

4

approximately January 1993, SALAH, while in Israel to assist Hamas, was arrested and, thereafter, incarcerated until approximately November 1997. Nonetheless, SALAH carried on his membership in Hamas and, subsequent to his return to the United States, continued his activities in support of Hamas, including directing and financing travel to Israel and the West Bank in or about October 1999 of a Chicago-based associate.

K. ABDELHALEEM HASAN ABDELRAZIQ ASHQAR, a/k/a "Abu Hasan," "Abu Ali Hasan," and "Samir," initially entered the United States as a graduate student at the University of Mississippi in Oxford, Mississippi, and currently resides in the Washington, D.C. area. From at least as early as 1989, ASHQAR functioned as a conduit of money for Hamas members both in the United States and abroad. In this role, ASHQAR opened various bank accounts in and around Oxford, Mississippi which he utilized as a clearinghouse for Hamas funds from defendant ABU MARZOOK as well as other Hamas members and organizations in the United States and abroad. ASHQAR furthered these financial activities both through the use of his personal bank accounts as well as through his establishment of the Al-Aqsa Educational Fund, Inc. ASHQAR also served as a communications conduit for Hamas both through his participation in and linking of telephone calls between various Hamas members in the United States and abroad, as well as his storing and disseminating numerous Hamas-related documents that concerned both the public activities of Hamas as well as the internal operation of Hamas. In this role, ASHQAR had contact with numerous co-conspirators.

## HAMAS CO-CONSPIRATORS

L. The activities of the defendants were carried out and supported through the assistance of other Hamas members located in the United States and abroad who provided

communications, logistical, and financial support in furtherance of Hamas. At times material to this indictment, these members included but were not limited to:

i. Khalid Mish'al, a/k/a "Khalid Abdulqader," and "Abu Walid;" Abdel Aziz Al-Rantisi, a/k/a "Abu Mohammad," "Abu Ahmad," and "Abu Ayas;" and Imad Al-Alami, a/k/a "Abu Hamman," were all high-ranking members and officers of Hamas who had significant input into the direction and activities of Hamas. Defendant ASHQAR had contact with various of these individuals to discuss Hamas issues and to facilitate these individuals' communication with individuals in the West Bank and Gaza Strip.

ii. Mohammed Qassem Sawalha, a/k/a "Muhammad Khadhem Sawalha," "Abu Obeida," "Abu Ubada," "Abu Ubaydah," and "Abu Ubeida," was initially a Hamas leader in the West Bank until he relocated to London, England in the early 1990s. Defendants SALAH and Co-conspirator A met with Sawalha in London while en route from the United States to Israel in 1992 and 1993. During these meetings, defendant SALAH and Co-conspirator A received instructions from Sawalha regarding particular Hamas-related activities they were to carry out while in Israel, the West Bank, and the Gaza Strip.

iii. Adel Ahmed Awadallah, a/k/a "Aadil Awadallah" and "The Engineer 3," was a high-ranking Hamas military leader who was responsible for facilitating several deadly terrorist attacks carried out in Israel. During trips to the Middle East in 1992 and 1993, defendant SALAH met with Awadallah to discuss Hamas issues and to provide Awadallah funds to be used in furtherance of Hamas activities. On approximately September 10, 1998, Awadallah was killed during a shootout with Israeli defense forces in the town of Hebron in the West Bank.

iv. Salah Al-Arouri, a/k/a "Salih Suleiman," and "Salih Dar Sulaiman," was

6

a high-ranking Hamas military leader dating back to his role as a Hamas student cell leader at Hebron University in the early 1990s. In his capacity as a Hamas military leader, Al-Arouri met with and received from defendant SALAH tens of thousands of dollars for Hamas-related activities. Al-Arouri used the funds provided by defendant SALAH for the purchase of weapons that were to be used in terrorist attacks.

v. Sheik Jamil Hamami, a/k/a "Jamil Hamimi" and "Abu Hamza," was a Hamas leader active in the West Bank who, on occasion, traveled to the United States to conduct Hamas business and raise funds for Hamas. In particular, in March 1994, Hamami met with defendant ASHQAR in Mississippi to discuss a variety of issues related to Hamas.

vi. Hassan Salameh was a Hamas member who initially worked under the command of Hamas bomb builder and co-conspirator Yihye Ayash, a/k/a "The Engineer," and "The Engineer 1," until Ayash's death, at which time Ayash's position in Hamas was filled by co-conspirator Adel Awadallah. Salameh, with the assistance of other Hamas co-conspirators, was responsible for a string of bus bombings in approximately February and March 1996 that killed numerous civilians. After his arrest, Salameh continued his work on behalf of Hamas by publicizing his actions carried out for Hamas and Hamas's goal of pursuing terrorist activities to force the State and citizens of Israel to cede physical and political control over the lands comprising Israel, the West Bank, and the Gaza Strip.

vii. Ismael Selim Elbarasse, a/k/a "Ismael Selim El-barasse," from at least as early as 1990, worked as an assistant to defendant ABU MARZOOK. Elbarasse maintained a joint bank account with defendant ABU MARZOOK that was used to transfer substantial sums of money to Hamas members, including defendant SALAH.

viii. Co-conspirator A was a member of Hamas who lived in or around Chicago. Beginning no later than in or about January 1993, Co-conspirator A traveled to London and to Israel and the West Bank on behalf of Hamas, meeting with Hamas representatives as well as leaders and members of the Al-Qassam Brigades in support of Hamas members and activities in the Middle East. In approximately May 1993, Co-conspirator A was convicted in an Israeli military court of crimes related to his association with Hamas. Nonetheless, Co-conspirator A carried on his membership in Hamas. Subsequent to his return to the United States, Co-conspirator A briefed Hamas leadership in the United States regarding his mission with defendant SALAH, and received compensation for his involvement with Hamas.

ix. Co-conspirator B was a Hamas member who has lived in Louisiana. Co-conspirator B traveled between the United States and West Bank on numerous occasions over the past 15 years using approximately 14 passports. During the early 1990s, Co-conspirator B relayed messages between defendant SALAH and high-ranking Hamas military leaders, including Adel Awadallah and Salah Al-Arouri. On one occasion, Co-conspirator B relayed a message and passport photographs from Adel Awadallah to defendant SALAH in order for defendant SALAH to obtain a false passport for Awadallah so that Awadallah could travel outside of the West Bank without detection by the Israeli government. In addition, in the early 1990s Co-conspirator B received approximately $140,000 in a wire transfer from overseas in relation to his Hamas activities.

x. Co-conspirator C was recruited by defendant SALAH during the early 1990s to become a member of Hamas. After his recruitment by defendant SALAH, defendant SALAH and other Hamas members trained Co-conspirator C in various Hamas methods. After his arrest by Israeli authorities in January 1993, defendant SALAH attempted to use consular officials

from the American Embassy in Israel, unbeknownst to the consular officials, to pass messages to Co-conspirator C.

xi.  Co-conspirator D was recruited by defendant SALAH during the early 1990s to become a member of Hamas.  After his recruitment by defendant SALAH, defendant SALAH and other Hamas members trained Co-conspirator D in various Hamas methods.  After his arrest by Israeli authorities in January 1993, defendant SALAH attempted to use consular officials from the American Embassy in Israel, unbeknownst to the consular officials, to pass messages to Co-conspirator D.

xii.  Co-conspirator E, Co-conspirator F, Co-conspirator G, Co-conspirator H, and Co-conspirator I, among others, received transfers of funds from defendants ABU MARZOOK and ASHQAR and other co-conspirators and disbursed these funds, frequently in smaller amounts, to foreign accounts and individuals, including defendant SALAH, for ultimate disbursal to Hamas members in the West Bank and Gaza Strip.

xiii.  Co-conspirator J was a Hamas member in the West Bank with whom defendant SALAH met in approximately January 1993 and who further traveled to the United States and established bank accounts to hold Hamas funds from defendant ABU MARZOOK and co-conspirator Elbarasse to be utilized for Hamas purposes.

## THE HAMAS ENTERPRISE

2.  At times material to this indictment, Hamas constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4); that is, a group of individuals associated in fact, and which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce.  This enterprise is hereby referred to for purposes of this count as "Hamas" or

9

the "enterprise." Hamas constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. Defendants ABU MARZOOK, SALAH, and ASHQAR participated in the operation and management of the enterprise. The objectives of Hamas were the forcing of the State and citizens of Israel to cede physical and political control over the lands comprising Israel, the West Bank, and the Gaza Strip, and the replacement of the Israeli political authority over these lands with an Islamic government, through means that included the promotion and execution of acts of terrorism.

## THE RACKETEERING CONSPIRACY

3. Beginning no later than 1988 and continuing to the present, in Chicago, Bridgeview, and other locations in the Northern District of Illinois, Eastern Division, and elsewhere:

MOUSA MOHAMMED ABU MARZOOK,
a/k/a "Abu Omar,"
a/k/a "Tareq,"
a/k/a "Abu Rizq,"
MUHAMMAD HAMID KHALIL SALAH,
a/k/a "Muhammad Abd Al-'Hamid Salah,"
a/k/a "Abu Ahmad," and
ABDELHALEEM HASAN ABDELRAZIQ ASHQAR,
a/k/a "Abu Hasan,"
a/k/a "Abu Ali Hasan,"
a/k/a "Samir,"

defendants herein, along with Khalid Mish'al, Abdel Aziz Al-Rantisi, Imad Al-Alami, Mohammed Qassem Sawalha, Adel Ahmed Awadallah, Salah Al-Arouri, Sheik Jamil Hamami, Yihye Ayash, Hassan Salameh, Ismael Selim Elbarasse, Co-conspirator A, Co-conspirator B, Co-conspirator C, Co-conspirator D, Co-conspirator E, Co-conspirator F, Co-conspirator G, Co-conspirator H, Co-conspirator I, Co-conspirator J, and others both known and unknown, being persons employed by and associated with an enterprise, namely Hamas, which engaged in and the activities of which

10

affected interstate and foreign commerce, did conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, that is, through multiple acts indictable under the following federal provisions or involving murder and chargeable under the following State laws, namely:

(a)   720 ILCS 5/8-2 and 720 ILCS 5/9-1 (first degree murder and conspiracy to commit first degree murder);

(b)   720 ILCS 5/8-1.1 (solicitation of first degree murder);

(c)   18 U.S.C. § 956(a)(1) (conspiracy to kill, kidnap, maim or injure persons in a foreign country);

(d)   18 U.S.C. § 1956 (money laundering and attempt and conspiracy to do so);

(e)   18 U.S.C. § 1503 (obstruction of justice);

(f)   18 U.S.C. § 2339B (providing material support or resources to designated foreign terrorist organizations and attempt and conspiracy to do so);

(g)   18 U.S.C. § 1203 (hostage taking and attempt and conspiracy to do so);

(h)   18 U.S.C. § 1543 (forgery or false use of passport and attempt to do so); and

(i)   18 U.S.C. § 1952 (travel in aid of racketeering enterprises).

4.   It was a part of the conspiracy that defendants ABU MARZOOK, SALAH, and ASHQAR agreed amongst themselves and with other co-conspirators that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

11

## METHODS AND MEANS OF THE CONSPIRACY

5. It was part of the conspiracy that Hamas members solicited, organized, and carried out acts of violence, intimidation, and threats against Israel, its inhabitants and others, including murders, suicide bombings, and kidnappings, and solicited and caused others to do so, with the intent to establish a Palestinian/Islamic state in the lands comprising Israel, the West Bank, and Gaza Strip, and to derail peace initiatives between the government of Israel and Palestinian representatives.

6. It was further part of the conspiracy that Hamas arranged to make videotaped statements and wills of Hamas members who were planning to personally participate in acts of violence, including suicide attacks, to be disseminated, after the deaths of those members, as tools to promote the goals of the enterprise and to increase and further the public perception of Hamas as a terrorist organization with its goal to establish a Palestinian/Islamic state in the lands that comprise Israel, the West Bank, and Gaza Strip, and to derail peace initiatives between the government of Israel and Palestinian representatives.

7. It was further part of the conspiracy that Hamas members made public statements and issued public declarations which, among other things: (a) proclaimed and acknowledged that specific acts of violence had been committed by Hamas; (b) threatened future acts of violence if Hamas's demands were not met; and (c) were intended to promote and foster the prestige and standing of Hamas among the Palestinian people and others.

8. It was further part of the conspiracy that Hamas members secretly established cells or sections of Hamas in different countries, including the United States, and, within the United States, used various means, including corporate structures and financial institutions, to conceal the activities of Hamas and the movement of money for Hamas activities.

12

9. It was further part of the conspiracy that Hamas members actively raised money both in the United States and elsewhere in order to fund the activities of the enterprise, including the violent acts of the enterprise.

10. It was further part of the conspiracy that Hamas members routinely moved money into the United States through wire transfers and other means from locations outside the United States in order to eventually move the money to the West Bank and Gaza Strip, including for the funding of violent activities to be committed by Hamas.

11. It was further part of the conspiracy that Hamas provided funds to the families of Hamas detainees, deportees, and suicide bombers.

12. It was further part of the conspiracy that Hamas members infiltrated various universities and other academic and social institutions in the West Bank and Gaza Strip in order to control the educational directives of the universities and institutions and use the universities and institutions for recruitment of additional enterprise members, some of whom were tasked with committing violent acts on behalf of the enterprise.

13. It was further part of the conspiracy that Hamas members worked with terrorist and other organizations including, but not limited to, Fatah, the Popular Front for the Liberation of Palestine, the Democratic Front for the Liberation of Palestine, the Palestinian Islamic Jihad, and the Palestinian Liberation Organization, to achieve the goals of the enterprise.

14. It was further part of the conspiracy that Hamas arranged to have enterprise members in the United States serve as facilitators of communications between other enterprise members within Israel, the West Bank, the Gaza Strip, and various other countries.

15. It was further part of the conspiracy that Hamas arranged for the creation of false

13

passports and other travel documents for its members.

16.    It was further part of the conspiracy that Hamas members purchased weapons and explosives for use in terrorist activities.

17.    It was further part of the conspiracy that Hamas trained its military operatives in the use of weapons, explosives, and military strategies.

18.    It was further part of the conspiracy that Hamas members were trained and instructed to refuse to provide information to authorities trying to investigate the enterprise in order to ensure the enterprise could continue to function and so that other members of the enterprise would not be apprehended.

19.    It was further part of the conspiracy that Hamas members who had been apprehended by Israeli authorities continued to work on behalf of the enterprise while detained by: (a) attempting to provide to Hamas members who had not been apprehended an accounting of the detained member's activities on behalf of the enterprise so that the detained member's activities could be continued; (b) attempting to trade with Israeli authorities information about the activities of Hamas, such as the location of the bodies of individuals killed by Hamas, in exchange for various concessions from the government of Israel, such as the release of other detainees; (c) continuing to direct the affairs of Hamas members who had not been apprehended; and (d) making statements publicizing and glorifying Hamas's actions and Hamas's goal of pursuing terrorist activities to force the State and citizens of Israel to cede physical and political control over the lands comprising Israel, the West Bank, and the Gaza Strip.

20.    It was further part of the conspiracy that Hamas, for the purpose of assessing and minimizing disruption to the enterprise: (a) maintained lists of Hamas members detained or

14

otherwise arrested for activities undertaken on behalf of the enterprise; (b) obtained and analyzed copies of confessions provided by apprehended enterprise members to Israeli authorities; and (c) monitored proceedings against those enterprise members who had been apprehended by Israeli authorities.

21. It was further part of the conspiracy that Hamas utilized instrumentalities and facilities of interstate and foreign commerce including telephones, telephone facsimiles, private commercial carriers, computers, mail, and wire facilities, to communicate and promote and conduct the affairs of the enterprise.

22. It was further part of the conspiracy that Hamas members utilized codes and aliases in conversations and written communication to conceal and disguise the activities of the enterprise and the identities of members of the enterprise.

23. It was a further part of the conspiracy that defendants ABU MARZOOK, SALAH, and ASHQAR, and others misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden the purposes of, and acts done, in furtherance of the conspiracy.

## **OVERT ACTS**

24. In furtherance of the conspiracy and to accomplish the objects of the conspiracy, the defendants and their co-conspirators committed, among others, the following overt acts within the Northern District of Illinois and elsewhere:

A. In or about August 1988, an organization which came to be known as Hamas issued an organizational charter setting forth as its purpose and objective the transformation of Israel, the West Bank, and Gaza Strip into an Islamic state, and specified *jihad*, to include killing Israelis, as a means by which the enterprise's objectives were to be achieved.

15

B.      Beginning no earlier than in or about August 1988, defendants ABU MARZOOK, SALAH, and ASHQAR, as well as others known and unknown, began working on behalf of Hamas.

C.      Beginning no later than 1990, defendants ABU MARZOOK and SALAH were members of a United States-based Hamas security committee.  The activities of the security committee included, among other things, the identification of Palestinian men studying in the United States, for the purpose of attempting to recruit those Palestinian men into Hamas.  The security committee generally, and defendant SALAH specifically, compiled information on the Palestinian men which included their fields of study, the projected completion dates of their study, the projected dates of their return to the West Bank and Gaza Strip, and their capacity to participate in terrorist activities against Israel.  This process produced numerous names which the security committee sorted based on their knowledge of chemistry, physics, computer science, and military operations.

D.      Sometime in the early 1990s, the individuals identified by the security committee were tested and eventually narrowed down to a small number of individual candidates for operational roles in Hamas terrorist activities.  Those candidates, including Co-conspirator C and Co-conspirator D, were provided with advanced training in  military operations and bomb-making.

E.      In or about September 1992, to facilitate the training of Co-conspirator C and Co-conspirator D, defendant SALAH, while in Chicago, Illinois, purchased airline tickets for travel between the United States and locations in the Middle East for Co-conspirator C and Co-conspirator D.  Both Co-conspirator C and Co-conspirator D traveled to the Middle East with the tickets provided by defendant SALAH and received advanced training in bomb-making from, among others, Hamas military operatives.

16

F.    In approximately August 1992, defendant SALAH met and conferred with defendant ABU MARZOOK and co-conspirator Mohammed Qassem Sawalha regarding the need to revitalize Hamas terrorist operations in the West Bank. During the meeting, Sawalha, who had previously been in charge of Hamas terrorist operations within the West Bank, identified specific Hamas members still residing in the West Bank who could be used to revitalize Hamas's terrorist activities. Among these individuals were co-conspirators Adel Ahmed Awadallah and Salah Al-Arouri.

G.    To further the objective of revitalizing Hamas's terrorist operations in the West Bank, in approximately September 1992, defendant SALAH traveled from Chicago, Illinois, to the West Bank. While in the West Bank, defendant SALAH, who used the name Abu Ahmad, met with Awadallah on several occasions. During these meetings, defendant SALAH and Awadallah discussed both Hamas terrorist activities and political activities in the West Bank and Gaza Strip. Awadallah informed defendant SALAH that Awadallah would need several months to reorganize Hamas's terrorist cells in the West Bank because Awadallah, after an arrest by Israeli authorities, had directed Hamas members to burn Hamas organizational documents containing information about Hamas cells in the West Bank. Defendant SALAH and Awadallah also discussed whether Hamas should murder Victim A, a Palestinian leader regarded as a leading proponent of peace with Israel.

H.    Also while in the West Bank in approximately September 1992, defendant SALAH met with co-conspirator Salah Al-Arouri, a Hamas member headquartered at Hebron University in the West Bank. Al-Arouri informed defendant SALAH that Hamas needed money to purchase weapons to carry out terrorist activities. Defendant SALAH agreed to provide Al-Arouri money for the purchase of weapons and other military supplies and, thereafter, provided Al-Arouri

17

at least approximately $50,000 for these purposes. Defendant SALAH was able to provide the money to Al-Arouri by making withdrawals from one of his Chicago bank accounts of ten $5,000 checks which were cashed in Israel on or about September 8, 1992.

      I.     Also in approximately September 1992, defendant SALAH met with Hamas leader Sheik Jamil Hamami a/k/a Abu Hamza.

      J.     Also in approximately September 1992, defendant SALAH met with Hamas leader Abu Saeb, a/k/a Abu Saab, who was involved in Hamas terrorist operations in the Gaza Strip. Abu Saeb informed defendant SALAH that he had approximately fifty-three Hamas recruits who were prepared to carry out terrorist attacks, but that funding was needed to help carry out the attacks. Abu Saeb informed defendant SALAH that Hamas was having problems with individuals collaborating and providing information about Hamas activities to Israeli authorities. Abu Saeb informed defendant SALAH that certain collaborators needed to be killed. Defendant SALAH agreed to and did pass on the information provided by Abu Saeb and Abu Saeb's request for money to defendant ABU MARZOOK and others.

      K.     After his return to Chicago from the Middle East in approximately September 1992, defendant SALAH received a $50,000 check from the bank account of defendant ABU MARZOOK as repayment for funds that defendant SALAH provided to Hamas members in the West Bank and Gaza Strip.

      L.     From approximately September 18, 1992, to approximately December 13, 1992, Hamas members publicly claimed credit for eight different terrorist actions that resulted in the deaths of numerous Israeli civilians and military personnel. In the December 13, 1992 terrorist operation, members of the Al-Qassam Brigades kidnaped Israeli soldier Nissam Toledano and

offered to release Toledano in exchange for the release of jailed Hamas founder and leader Sheik Ahmed Yassin. Hamas members publicly stated that if Sheik Yassin was not released then Toledano would be killed. Hamas members publicly claimed that when Sheik Yassin was not released they killed Toledano. Toledano's body was found on approximately December 15, 1992, on the Jerusalem-Jericho highway.

M.    From at least as early as 1989 through January 1993, defendants ABU MARZOOK, ASHQAR, co-conspirator Elbarasse, Co-conspirator E, Co-conspirator H, Co-conspirator I, Co-conspirator J, and others utilized various accounts at financial institutions throughout the United States to transfer large sums of money from various sources abroad through the United States to Israel and elsewhere. These transfers included, but are not limited to, the following:

> i.    In approximately November 1990, Co-conspirator H received into his Cleveland-based account approximately $130,000 from the Louisiana-based account of defendant ABU MARZOOK, approximately $40,000 from the Mississippi-based account of defendant ASHQAR, and approximately $54,000 from the Louisiana-based account of Co-conspirator E, a portion of which funds were thereafter sent to Israel and Switzerland.

> ii.   In approximately February 1991, Co-conspirator I, an associate of defendant ABU MARZOOK, received a wire transfer of approximately $480,000 from a bank in Saudi Arabia to his Virginia-based account. Co-conspirator I, in turn, wired approximately $99,000 to the Cleveland-based account of Co-conspirator H who, in turn, wrote approximately 16 checks worth $100,000 to Co-conspirator F, which checks were negotiated in Israel.

> iii.  In approximately May 1991, defendant ABU MARZOOK and co-conspirator Elbarasse transferred approximately $40,000 from a Virginia-based bank account to a Cleveland-based account held by Co-conspirator H who, in turn, signed five checks each in the amount of $8,500, several of which were written to Co-conspirator F, which

checks were negotiated in Israel.

iv. From approximately August 1991 to approximately November 1991, Co-conspirator H received into his Cleveland-based account approximately $50,000 from the Louisiana-based account of defendant ABU MARZOOK, approximately $125,000 from the Mississippi-based account of defendant ASHQAR, and approximately $100,000 from the Louisiana-based account of Co-conspirator E, a portion of which funds were thereafter sent to Israel.

v. In approximately December 1991, defendant ABU MARZOOK and co-conspirator Elbarasse received a wire transfer of approximately $100,000 into their Virginia-based account from an account in Geneva, Switzerland. In turn, defendant ABU MARZOOK and co-conspirator Elbarasse thereafter transferred $50,000 from their Virginia-based account to the Cleveland-based account of Co-conspirator H who, in turn, wrote five $10,000 checks to Co-conspirator F or to cash, all five of which were negotiated in Israel in January 1992.

vi. In approximately January 1992, Co-conspirator E received wire transfers of approximately $613,000 into his Virginia-based account from an account in Saudi Arabia. Soon thereafter, Co-conspirator E made a series of wire transfers to accounts in the United States and abroad, including a transfer of approximately $100,000 to the Cleveland-based account of Co-conspirator H.

vii. In approximately June 1992, defendant ABU MARZOOK and co-conspirator Elbarasse received approximately $900,000 in multiple wire-transfers into their Virginia-based bank account. Soon thereafter, defendant ABU MARZOOK and co-conspirator Elbarasse wire transferred approximately $350,000 to four accounts domestically and overseas, including $100,000 into the Milwaukee-based account of Co-conspirator J.

viii. In approximately October 1992, Co-conspirator E received a wire transfer of approximately $150,000 into his Virginia-based account. The day following the receipt of the funds, Co-conspirator E wire transferred approximately $150,000 to Geneva, Switzerland.

ix. On approximately December 21, 1992, defendant ABU MARZOOK and co-conspirator Elbarasse received a wire transfer of approximately $100,000 into their Virginia-based account from an

20

account in New York in the name of "Gazi Abu Samah."

    x.    On approximately January 4, 1993, defendant ABU MARZOOK and co-conspirator Elbarasse received a wire transfer of approximately $100,000 into their Virginia-based account from an account in New York in the name of "Gazi Abu Samah."

N.    In approximately December 1992, Co-conspirator B came to Chicago, Illinois, and provided two pictures of co-conspirator Adel Awadallah to defendant SALAH so that defendant SALAH could have a false passport made for Awadallah. Defendant SALAH and co-conspirator Mohammed Qassem Sawalha attempted to have the false passport manufactured.

O.    In approximately December 1992, in response to Israel's deportation of over 400 Hamas members and other radicals from Israel, the West Bank, and the Gaza Strip, defendant ABU MARZOOK contacted Hamas members throughout the Middle East and elsewhere to discuss how to deal with the deportation of the Hamas members. Among those individuals defendant ABU MARZOOK called to discuss the issue of the Hamas deportees was defendant SALAH.

P.    In approximately late December 1992 and early January 1993, in response to Israel's deportation of over 400 Hamas members and other radicals from Israel, the West Bank, and the Gaza Strip, Hamas leadership, including defendant ABU MARZOOK as the chairman of the Hamas delegation, met with leadership of the anti-Israeli Fatah organization. Leadership from Hamas and Fatah discussed how to deal with the deported Hamas members, whether the Palestinian Liberation Organization ("PLO") should break off then ongoing peace discussions with Israel, and whether to limit terrorist attacks to Israeli settlers in the West Bank and Gaza Strip and Israeli soldiers. During the meetings, defendant ABU MARZOOK stated a willingness and readiness to escalate the acts of violence against Israel. Discussions also covered changes in organizational

21

structures with the purpose of best promoting "armed struggle against the Zionist enemy."

Q.     In approximately late December 1992, at the request of Hamas leadership, and defendant ABU MARZOOK specifically, defendant SALAH agreed to travel from Chicago to the West Bank and Gaza Strip to assess the ability of Hamas to function after the deportations and to deliver money to Hamas members in the individual regional cells within the West Bank and Gaza Strip. In particular, defendant SALAH was directed to assess Hamas's abilities to continue to carry out terrorist attacks.

R.     Beginning on or about December 29, 1992, and continuing until on or about January 25, 1993, defendant SALAH received into his Chicago based bank accounts a series of wire transfers, totaling approximately $985,000, from accounts associated with defendant ABU MARZOOK, to be distributed to Hamas members in the West Bank and Gaza Strip. Those transfers included:

    i.    On or about December 29, 1992 the wire transfer of approximately $300,000 from a Virginia-based bank account held in the name of defendant ABU MARZOOK and co-conspirator Elbarasse, which money had previously entered the Virginia-based account in two wire transfers, one originating from Geneva, Switzerland, and a second received from an account in New York held in the name of "Gazi Abu Samah."

    ii.    On or about January 20, 1993, the wire transfer of approximately $135,000 from a Virginia-based bank account held in the name of defendant ABU MARZOOK and co-conspirator Elbarasse, a portion of which money had previously entered the Virginia-based account in a wire transfer received from an account in New York held in the name of "Gazi Abu Samah."

    iii.    On or about January 21, 1993, the wire transfer of approximately $50,000 from a Virginia-based bank account held in the name of defendant ABU MARZOOK and co-conspirator Elbarasse.

iv.  On or about January 21, 1993, the wire transfer of approximately $30,000 from a Virginia-based bank account held in the name of Co-conspirator E.

v.  On or about January 22, 1993, the wire transfer of approximately $170,000 from a Virginia-based bank account held in the name of Co-conspirator E, which money had previously entered the Virginia-based account on approximately January 21, 1993, from the Virginia-based account of defendant ABU MARZOOK and co-conspirator Elbarasse.

vi.  On or about January 25, 1993 the wire transfer of approximately $300,000 from a Virginia-based bank account held in the name of defendant ABU MARZOOK and co-conspirator Elbarasse.

S.  On or about January 13, 1993, defendant SALAH left the United States en route to the West Bank and Gaza Strip for the purpose of assessing the ability of Hamas to function after the deportation and to deliver money to Hamas members.

T.  While en route to the Middle East, defendant SALAH stopped in London, England and met with co-conspirator Mohammed Qassem Sawalha. Sawalha directed defendant SALAH to provide money to various Hamas members in the West Bank and Gaza Strip, and provided contact information for meetings with, among others, co-conspirator Adel Awadallah, Abu Hasam a/k/a Abu Hussam, and Abu Majahad a/k/a Abu Majhad.

U.  Between on or about January 17, 1993, to on or about January 19, 1993, after arriving in Israel, defendant SALAH arranged to have approximately $230,000 of the money in his Chicago bank accounts transferred to him through a money changer in Ramallah. Defendant SALAH transferred $30,000 of that amount by executing three $10,000 checks and providing them to the money changer. The transfer of the additional $200,000 was effected by means of a wire transfer made by defendant SALAH's wife from one of his Chicago accounts directly to a Chicago

23

account associated with the money changer. Defendant SALAH collected the $230,000 in cash from the money changer for distribution to Hamas members in the West Bank and Gaza Strip.

V.     After arriving in Israel, defendant SALAH met with co-conspirator Adel Awadallah. Defendant SALAH and Awadallah conferred on Hamas personnel issues and specific planned terrorist attacks. Defendant SALAH arranged for $60,000 to be provided to Awadallah for various Hamas needs.

W.     While in Israel, defendant SALAH also traveled to the Gaza Strip and met with Hamas member Abu Majahad. Defendant SALAH provided Abu Majahad money for various Hamas organizational needs. Defendant SALAH agreed to carry messages from Abu Majahad to Hamas members abroad.

X.     While in Israel, defendant SALAH also met with Hamas member Abu Saeb a/k/a Abu Saab. Defendant SALAH and Abu Saeb discussed various terrorist attacks carried out by Hamas and the state of the Al-Qassam Brigades in the Gaza Strip. Abu Saeb informed defendant SALAH that Hamas now had eight underground shelters for hiding fugitives and that Hamas members in Rahat had: (1) three M-16 rifles; (2) three Kalishnikov rifles; and (3) two Uzi machine guns. Abu Saeb informed defendant SALAH that there would be an increase in terrorist activity during the month of Ramadan. Abu Saeb asked defendant SALAH for additional money to continue terrorist activity and to purchase weapons. Defendant SALAH agreed to provide additional money.

Y.     On or about January 25, 1993, defendant SALAH was arrested by Israeli authorities based on his involvement in Hamas. After his arrest, defendant SALAH continued to attempt to assist Hamas. In particular, defendant SALAH attempted to trade information given to him by defendant ABU MARZOOK and Co-conspirator G regarding the burial location of an Israeli

soldier, Ilan Sa'adon, who was murdered in a Hamas terrorist attack in 1989, in return for the release of numerous Hamas members.

Z.     On or about March 19, 1993, defendant SALAH attempted to use consular officials from the American Embassy in Israel, unbeknownst to the consular officials, to pass messages to Co-conspirator C and Co-conspirator D, who had recently returned from the Middle East. Further, defendant SALAH falsely denied to consular officials any association with defendant MARZOOK or Hamas.

AA.     After his arrest, defendant SALAH attempted to provide information to his co-conspirators regarding how to avoid capture in the future and how to deal with the negative publicity of his arrest in the United States.

BB.     In or about August 1993, after Co-conspirator A returned from Israel to the United States, defendant ASHQAR debriefed Co-conspirator A regarding Co-conspirator A's and defendant SALAH's mission to the Middle East on behalf of Hamas culminating with their arrests by Israeli authorities.

CC.     In or about August 1993, Co-conspirator A reported to Hamas co-conspirators in the United States including, among others, defendant ASHQAR, that Co-conspirator A believed that Co-conspirator A and defendant SALAH had been caught by the Israeli authorities because, among other reasons, other Hamas members had confessed about Co-conspirator A's and defendant SALAH's roles in Hamas and because defendant SALAH had withdrawn large sums of money. Co-conspirator A further detailed specific physical evidence relating to Hamas operations seized at the time of defendant SALAH's arrest, including documents and records listing names of Hamas operatives, codes and money to be used in Hamas operations. Based on this information, specific

25

recommendations for future Hamas operations were generated.

DD. In or about the Fall of 1993, defendant ASHQAR facilitated Co-conspirator A's reintegration into the community and Hamas in the United States. These efforts included the transfer of over $15,000 to Co-conspirator A, as well as a proposal to other Hamas members that Co-conspirator A be included in a secret meeting of Hamas members to take place in Philadelphia, Pennsylvania.

EE. Further, as part of his role as a Hamas administrator, defendant ASHQAR produced, collected, and disseminated numerous documents and information in furtherance of Hamas's goals in the United States and abroad, including goals related to the Hamas command and control structure, recruitment of new members for Hamas, progress reports of Hamas plans and activities, and control and minimization of damage to Hamas from the arrest and loss of members involved in terrorist actions. In particular, defendant ASHQAR collected and, at times, disseminated documents related to:

    i.    Hamas members' aliases, phone numbers, and addresses, including information for defendants SALAH and ABU MARZOOK, as well as other co-conspirators.

    ii.    The death or capture of various Hamas members.

    iii.    Hamas terrorist attacks.

    iv.    Security training and directives, including counter-surveillance techniques, secrecy protocols, and interrogation issues.

    v.    Confessions provided by captured Hamas members, including several of defendant SALAH's confessions to Israeli authorities.

    vi.    Assessments and analysis on the state of Hamas within the West Bank and Gaza Strip as well as abroad.

26

vii.    Minutes or summaries of meetings between Hamas members and other organizations and groups, including the Palestinian Liberation Organization ("PLO"), Fatah, the Palestinian Front for the Liberation of Palestine ("PFLP"), and the Palestinian Islamic Jihad ("PIJ"), as well as meetings between Hamas members and foreign countries.

viii.    Information the Israelis obtained regarding Hamas membership and activities, including a document detailing information defendant SALAH provided to the Israelis and the circumstances under which the information was provided.

ix.    Israeli indictments against various Hamas members, including the indictment against Co-conspirator A.

x.    The movement of money for Hamas activities.

xi.    The Hamas deportees who were deported to Lebanon in December 1992, including statements by defendant ABU MARZOOK on the issue of the deportees.

xii.    Opposition to peace attempts between the State of Israel and Palestinians.

xiii.    A secret meeting of Hamas members in Philadelphia, Pennsylvania.

xiv.    Resistance to Israeli occupation of the West Bank and Gaza Strip and Hamas's relationship with other pro-Palestinian organizations.

xv.    Policies and activities of various terrorist organizations or anti-Israeli groups.

xvi.    Hamas statements distributed by the Islamic Association for Palestine ("IAP").

FF.    As part of his role as a Hamas administrator, defendant ASHQAR participated in a number of phone conversations related to Hamas activity both in the United States and abroad. These phone conversations sometimes occurred in code. These phone calls were in furtherance of Hamas's goals in the United States and abroad, including goals related to the Hamas command and control structure, recruitment of new members for Hamas, progress reports of Hamas plans and

27

activities, and control and minimization of damage to Hamas from the arrest and loss of members involved in terrorist actions. In particular, defendant ASHQAR participated in phone conversations related to:

    i.      Hamas members' contacts with the United States government.

    ii.     Hamas's need for financial assistance in order to further its goals.

    iii.    The movement of money for Hamas.

    iv.    The Hamas members who were deported to Lebanon in December 1992.

    v.     Management of Hamas and Hamas personnel within the Gaza Strip and West Bank, including specific conversations related to:

        1.    Killing a Hamas member who was not obeying orders.

        2.    Hamas members collaborating with Israelis.

    vi.    Management of Hamas and Hamas members in the United States.

    vii.   Meetings defendant ASHQAR was to have with Co-conspirator G and Sheik Jamil Hamami in January and March 1994.

    viii.   A secret meeting of Hamas members in Philadelphia, Pennsylvania in October 1993.

    ix.    The affairs and activities of Co-conspirator A.

    x.     Hamas terrorist operations and terrorists.

    xi.    Hamas organizational initiatives in the United States.

    xii.   Opposition to peace attempts between the State of Israel and Palestinians.

    xiii.   Hamas founder Sheik Ahmed Yassin.

    xiv.   Hamas's views on the PLO, Yasir Arafat, and anti-Israeli organizations.

xv.    The affairs and activities of defendant SALAH.

GG.    In or about October 1993, defendant ASHQAR met with various Hamas members in Philadelphia, including co-conspirator Elbarasse, to discuss Hamas issues including, but not limited to, Hamas activities inside the United States and abroad and lessons learned from the capture of defendant SALAH.

HH.    In or about March 1994, defendant ASHQAR met in Oxford, Mississippi, with two other Hamas members, including co-conspirator Sheik Jamil Hamami, to discuss Hamas issues and the transfer of money for Hamas activities overseas.

II.    Throughout the mid-1990s, Hamas members publicly claimed credit for various terrorist actions that resulted in the death of numerous civilians and military personnel in Israel.  These included, but are not limited to: (1) an April 6, 1994 terrorist operation in which Hamas members publicly claimed responsibility for driving a car bomb into a public bus in Afula, Israel, killing eight Israelis; (2) an October 19, 1994 terrorist operation, in which Hamas members publicly claimed responsibility for a suicide bombing on a public bus in Tel Aviv, Israel, that killed thirteen Israelis and a Dutch national; (3) a February 26, 1996 terrorist operation in which Hamas members publicly claimed responsibility for a suicide bombing on a public bus in Jerusalem that killed twenty-four Israelis and two Americans; (4) a March 3, 1996 terrorist operation in which Hamas members publicly claimed responsibility for a suicide bombing on a public bus in Jerusalem that killed eight Israelis, an Ethiopian, and seven Romanians; (5) a May 13, 1996 terrorist operation in which Hamas members publicly claimed responsibility for a drive-by shooting at students waiting at a public bus stop in Beit El in the West Bank that resulted in the death of American student David

29

Boim; and (6) a July 30, 1997 terrorist operation in which Hamas members publicly claimed responsibility for two suicide bombings in a market in Jerusalem that killed sixteen Israelis.

JJ.    In approximately Fall 1997, co-conspirator Hassan Salameh, after his arrest for participation in various Hamas terrorist attacks, continued his work on behalf of Hamas by publicizing his actions carried out for Hamas and Hamas's goal of pursuing terrorist activities to force the State and citizens of Israel to cede physical and political control over the lands comprising Israel, the West Bank, and the Gaza Strip.

KK.    In or about February 1998, defendant ASHQAR, despite a grant of immunity, refused to testify before a federal Grand Jury sitting in New York, New York, and continued to refuse to testify into August 1998, in an effort to hide his and co-conspirators' activities on behalf of Hamas, and to continue his activities on behalf of Hamas undetected.

LL.    In or about March 1998, co-conspirator Elbarasse, despite a grant of immunity, refused to testify before a federal Grand Jury sitting in New York, New York, and continued to refuse to testify into September 1998, in an effort to hide his and co-conspirators' activities on behalf of Hamas, and to continue his activities on behalf of Hamas undetected.

MM.    In or about July 1999, Co-conspirator C, despite a grant of immunity, refused to testify before a federal Grand Jury sitting in Chicago, Illinois, and continued to refuse to testify into August 2000, in an effort to hide his and co-conspirators' activities on behalf of Hamas, and to continue his activities on behalf of Hamas undetected.

NN.    In or about November 2000, Co-conspirator D, having been served with a subpoena requiring his appearance before a federal Grand Jury, fled the United States to Jordan and has not returned to the United States since that time, in an effort to hide his and co-conspirators'

activities on behalf of Hamas, and to continue his activities on behalf of Hamas undetected.

OO.    Upon his return to the United States in approximately November 1997, defendant SALAH continued his activities on behalf of Hamas within the United States.  Among other things, this included the recruitment of Individual A to join Hamas and make trips to the Middle East in order to conduct Hamas activities.  As part of the recruitment of Individual A, defendant SALAH discussed with Individual A defendant SALAH's prior activities and actions on behalf of Hamas.

PP.    In or about October 1999, defendant SALAH assisted Individual A with travel arrangements to Israel to conduct business on behalf of Hamas.

QQ.    In or about October 1999, at the direction of defendant SALAH, Individual A traveled to Israel and the West Bank.  At defendant SALAH's direction, Individual A was to: (1) contact and meet with various Hamas members to convey messages and assess various Hamas needs in the West Bank; (2) deliver money to the family of imprisoned co-conspirator Salah Al-Arouri; (3) meet with co-conspirator Salah Al-Arouri in Ashkelon prison; and (4) scout specific locations in and around Jerusalem for suitability as targets for Hamas terrorist attacks.

RR.    In or about October 1999, after arriving in Israel, at the direction of defendant SALAH, Individual A provided money previously given to him by defendant SALAH to the family of imprisoned co-conspirator Salah Al-Arouri.

SS.    In or about October 1999, after arriving in Israel, at the direction of defendant SALAH, Individual A attempted to meet with co-conspirator Salah Al-Arouri in Ashkelon prison.

TT.    In or about October 1999, after arriving in Israel, at the direction of defendant SALAH, Individual A scouted specific locations in and around Jerusalem for suitability as targets

for Hamas terrorist attacks.

UU.    In or about October 1999, after arriving in Israel, at the direction of defendant SALAH, Individual A attempted to enter the Gaza Strip to visit with Hamas leader Sheik Ahmed Yassin.

VV.    In or about October 1999, after arriving in Israel, at the direction of defendant SALAH, Individual A met with various Hamas members.

WW.    In or about October 1999, after arriving in Israel, defendant SALAH and Individual A periodically discussed the progress that Individual A was making during his trip to Israel.

XX.    In or about October 1999, defendant SALAH discussed Individual A's trip to Israel with Hamas members in the West Bank with whom Individual A met.

YY.    In approximately October 1999, upon Individual A's return to the United States, defendant SALAH debriefed Individual A regarding Individual A's trip to Israel and the West Bank.

ZZ.    In approximately October 1999, upon Individual A's return to the United States, defendant SALAH told Individual A he was pleased with the success of Individual A's trip and informed Individual A that Individual A would be asked to take additional trips in furtherance of Hamas activities.

AAA.    In approximately October 1999, upon Individual A's return to the United States, defendant SALAH obtained from Individual A a photograph of defendant SALAH with co-conspirators Salah Al-Arouri and Adel Awadallah which Individual A had received from co-cococonspirator Salah Al-Arouri's mother.

32

BBB.   In or about April 2001, defendant SALAH, in a civil suit filed in federal court in Chicago, Illinois (*Boim v. Quranic Literacy Institute, et al.*, 00 C 2905), alleging that defendants SALAH and ABU MARZOOK, among others, as members of Hamas, were responsible for the death of David Boim who was murdered in a drive-by shooting in the West Bank in May 1996, in an attempt to avoid liability and thereby protect funds entrusted to him by defendant ABU MARZOOK and others, to hide his activities on behalf of Hamas, and to continue his activities on behalf of Hamas undetected, provided sworn answers to interrogatories in the *Boim* civil suit that he knew to be false.   In the sworn answers to interrogatories, among other falsehoods, defendant SALAH: (1) falsely represented that he never provided or delivered funds for the purpose of supporting Hamas; (2) falsely represented that he had only provided funds to a very limited number of individuals and failed to include a variety of fund transfers in which he had participated; (3) failed to disclose that he was a member of Hamas; (4) falsely represented that he had never met with defendant ABU MARZOOK; (5) falsely represented that he had never trained or attended training sessions of Hamas members; and (6) failed to disclose that he had transferred funds in excess of $1,000 to defendant ABU MARZOOK and others.

CCC.   In or about June 2003, defendant ASHQAR, despite a grant of immunity, refused to testify before a Grand Jury sitting in Chicago, Illinois, and continued to refuse to testify into October 2003, in an effort to hide his and co-conspirators' activities on behalf of Hamas, and to continue his activities on behalf of Hamas undetected.

All in violation of Title 18, United States Code, Sections 1962(d) and 2.

## COUNT TWO

The SPECIAL AUGUST 2003-2 GRAND JURY further charges:

1. Paragraphs 24OO through 24AAA of Count One are incorporated and realleged as though fully set forth herein.

2. In or about October 1999, in the Northern District of Illinois, Eastern Division, and elsewhere:

MUHAMMAD HAMID KHALIL SALAH,
a/k/a "Muhammad Abd Al-'Hamid Salah,"
a/k/a "Abu Ahmad,"

knowingly provided and attempted to provide material support and resources, specifically currency and personnel, to a foreign terrorist organization, specifically Hamas;

In violation of Title 18, United States Code, Section 2339B.

## COUNT THREE

The SPECIAL AUGUST 2003-2 GRAND JURY further charges:

1.      Paragraph 24BBB of Count One is incorporated and realleged as though fully set forth herein.

2.      In or about April 2001, in the Northern District of Illinois, Eastern Division, and elsewhere:

MUHAMMAD HAMID KHALIL SALAH,
a/k/a "Muhammad Abd Al-'Hamid Salah,"
a/k/a "Abu Ahmad,"

corruptly endeavored to influence, obstruct and impede the due administration of justice by submitting to the United States District Court, through lawyers acting under the authority of the court, false and misleading verified answers to interrogatories propounded on defendant SALAH in a civil suit filed against defendant SALAH and others which answers falsely stated, among other things, that defendant SALAH had never provided or delivered funds for the purpose of supporting Hamas;

In violation of Title 18, United States Code, Section 1503.

## COUNT FOUR

The SPECIAL AUGUST 2003-2 GRAND JURY further charges:

1.     At times material to this indictment:

(a)     A federal grand jury investigation was occurring before the Special April 2002 Grand Jury (02 GJ 369) in which the grand jury was actively involved in the investigation of the organization known as Hamas and members of Hamas for violation of various federal statutes, including, among others, the following provisions of Title 18 of the United States Code: Sections 1961 and 1962 (racketeering); Section 2339A (material support to terrorists); Section 2339B (material support to designated foreign terrorist organizations); Section 2339C (financing of terrorism); Section 956 (conspiracy to kill, kidnap, maim or injure persons or damage property in a foreign country); Section 2332 (killing of a United States national); Sections 1956 and 1957 (money laundering); Section 1341 (mail fraud); Section 1343 (wire fraud); Section 1001 (false statements to a government official); and Section 1512 (obstruction of justice).

(b)     On or about June 25, 2003, defendant ABDELHALEEM HASAN ABDELRAZIQ ASHQAR appeared before Chief Judge Charles P. Kocoras.  Chief Judge Kocoras entered an order compelling defendant ASHQAR to testify before the Special April 2002 Grand Jury, pursuant to Title 18, United States Code, Sections 6002 and 6003 (the "Compulsion Order"), and further ordering that no testimony provided by defendant ASHQAR or any information directly or indirectly derived from such testimony could be used against him in any criminal case except a prosecution for perjury, giving a false statement or otherwise failing to comply with the Compulsion Order.

(c)     On or about June 25, 2003, defendant ASHQAR appeared before the Special

36

April 2002 Grand Jury and was asked a series of questions, including, among others, questions about Hamas and members of Hamas, as well as questions regarding defendant ASHQAR's personal and professional background, including his place of birth, his employment history in the United States, and whether he personally was a member of Hamas. Defendant ASHQAR refused to answer those questions.

2. On or about June 25, 2003, at Chicago, in the Northern District of Illinois, Eastern Division,

> ABDELHALEEM HASAN ABDELRAZIQ ASHQAR,
> a/k/a "Abu Hasan,"
> a/k/a "Abu Ali Hasan,"
> a/k/a "Samir,"

defendant herein, did knowingly and willfully disobey and resist a lawful order and command of the Court, namely, to testify before the Special April 2002 Grand Jury (02 GJ 369), in that, after being granted immunity pursuant to the Compulsion Order, he refused to answer questions put to him during his grand jury appearance;

In violation of Title 18, United States Code, Section 401(3).

## COUNT FIVE

The SPECIAL AUGUST 2003-2 GRAND JURY further charges:

1.     Paragraph 1 of Count Four is incorporated and realleged as though fully set forth herein.

2.     From June 25, 2003, and continuing to October 9, 2003, defendant ASHQAR continued to refuse to answer questions before the Special April 2002 Grand Jury (02 GJ 369) despite the Compulsion Order.

3.     Beginning on or about June 25, 2003 and continuing until October 9, 2003, at Chicago, in the Northern District of Illinois, Eastern Division,

ABDELHALEEM HASAN ABDELRAZIQ ASHQAR,
a/k/a "Abu Hasan,"
a/k/a "Abu Ali Hasan,"
a/k/a "Samir,"

defendant herein, corruptly influenced, obstructed, and impeded the due administration of justice, and endeavored to do so, by refusing to testify before the Special April 2002 Grand Jury (02 GJ 369) which was investigating Hamas and members of Hamas, after having been ordered and compelled to do so;

In violation of Title 18, United States Code, Section 1503.

## FORFEITURE ALLEGATION

The SPECIAL AUGUST 2003-2 GRAND JURY further charges:

1. The allegations contained in Count One of the indictment are realleged and incorporated by reference for the purposes of alleging forfeiture pursuant to Title 18, United States Code, Section 1963.

2. As a result of the violation of Title 18, United States Code, Section 1962(d), as alleged in the foregoing indictment,

MOUSA MOHAMMED ABU MARZOOK,
a/k/a "Abu Omar,"
a/k/a "Tareq,"
a/k/a "Abu Rizq,"
MUHAMMAD HAMID KHALIL SALAH,
a/k/a "Muhammad Abd Al-'Hamid Salah,"
a/k/a "Abu Ahmad," and
ABDELHALEEM HASAN ABDELRAZIQ ASHQAR,
a/k/a "Abu Hasan,"
a/k/a "Abu Ali Hasan,"
a/k/a "Samir,"

defendants herein:

(a) have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

(b) have interests in, securities of, claims against, and property and contractual rights affording sources of influence over, the enterprise described in Count One which defendants established, operated, controlled, conducted, and participated in the conduct of, and conspired to do so, in violation of Title 18, United States Code, Section 1962, thereby making all such interests, securities, claims, and property and contractual rights subject to forfeiture to the United States of

America pursuant to Title 18, United States Code, Section 1963(a)(2);

    (c) have property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1963(a)(3).

    3. The interests of the defendants, jointly and severally subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3) include but are not limited to:

    (a)    Approximately $2,700,000.00;

    (b)    All Funds in Standard Bank & Trust Account No. 5580349268;

    (c)    All Funds in Standard Bank & Trust Account No. 239328806;

    (d)    All Funds in LaSalle Bank, F.S.B. Account No. 022034532; and

    (e)    As to defendant MUHAMMAD HAMID KHALIL SALAH only:

    Residential real property commonly known as 9229 S. Thomas, Bridgeview, Illinois, with Cook County, Illinois PIN 23-01-404-012.

    4. To the extent that the proceeds and property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 1963, as a result of any acts or omission by any defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the proceeds and property described above as being subject to forfeiture such substitute property to include, but not being limited to:

All Funds in First National Bank of Chicago Account  No. 8060700;

All pursuant to Title 18, United States Code, Section 1963.

## SENTENCING ALLEGATIONS

The SPECIAL AUGUST 2003-2 GRAND JURY further alleges:

1.     In and during the course of the commission of the conduct alleged in Count One of the Indictment (racketeering conspiracy):

a.     Defendants MOUSA MOHAMMED ABU MARZOOK, MUHAMMAD HAMID KHALIL SALAH, and ABDELHALEEM HASAN ABDELRAZIQ ASHQAR were organizers and leaders of five or more participants. USSG §3B1.1(a).

b.     The offense was a felony that involved, or was intended to promote, a federal crime of terrorism. USSG § 3A1.4(a).

c.     Defendants MOUSA MOHAMMED ABU MARZOOK, MUHAMMAD HAMID KHALIL SALAH, and ABDELHALEEM HASAN ABDELRAZIQ ASHQAR intentionally selected victims or property as the object of the offense because of the actual or perceived religion, national origin, and ethnicity of any person. USSG § 3A1.1(a).

d.     Defendant ABDELHALEEM HASAN ABDELRAZIQ ASHQAR willfully obstructed and impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation. USSG § 3C1.1.

e.     The amount of laundered funds involved more than $2,500,000. USSG § 2S1.1(a)(1); USSG § 2B1.1(b)(1)(J).

f.     The defendants believed the laundered/structured funds were intended to promote a crime of violence or unlawful activity. USSG § 2S1.1(b)(1); USSG § 2S1.3(b)(1)(A).

g.     The offense involved sophisticated laundering. USSG § 2S1.1(b)(3).

h.     The offense was part of a pattern of unlawful activity involving more than $100,000 in a 12-month period. USSG § 2S1.3(b)(2)(B).

i.     The offense resulted in substantial interference with the administration of justice. USSG § 2J1.2(b)(2).

j.     The offense involved a ransom demand or a demand upon government. USSG § 2A4.1(b)(1).

k.     A victim sustained permanent or life-threatening bodily injury. USSG §

2A4.1(b)(2)(A).

l.      A dangerous weapon was used.  USSG § 2A4.1(b)(3).

2.     In and during the course of the commission of the conduct alleged in Count Two (material support) of the Indictment:

     a.      Defendant MUHAMMAD HAMID KHALIL SALAH was an organizer and leader of five or more participants.  USSG §3B1.1(a).

     b.      The offense was a felony that involved, or was intended to promote, a federal crime of terrorism.  USSG § 3A1.4(a).

     c.      Defendant MUHAMMAD HAMID KHALIL SALAH intentionally selected victims or property as the object of the offense because of the actual or perceived religion, national origin, and ethnicity of any person.  USSG § 3A1.1(a).

3.     In and during the course of the commission of the conduct alleged in Count Three (obstruction of justice) of the Indictment:

     a.      Defendant MUHAMMAD HAMID KHALIL SALAH was an organizer and leader of five or more participants.  USSG §3B1.1(a).

     b.      The offense was a felony that involved, or was intended to promote, a federal crime of terrorism.  USSG § 3A1.4(a).

4.     In and during the course of the commission of the conduct alleged in Counts Four (criminal contempt) and Five (obstruction of justice) of the Indictment:

   a.     Defendant ABDELHALEEM HASAN ABDELRAZIQ ASHQAR was an organizer and leader of five or more participants.  USSG §3B1.1(a).

   b.     The offense was a felony that involved, or was intended to promote, a federal crime of terrorism.  USSG § 3A1.4(a).

   c.     The offense resulted in substantial interference with the administration of justice. USSG § 2J1.2(b)(2).


                    A TRUE BILL:


                    _____
                    FOREPERSON


_____
UNITED STATES ATTORNEY


-44-

No. 03 CR 978

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA

vs.

MOUSA MOHAMMED ABU MARZOOK

**S U P E R S E D I N G
I N D I C T M E N T**

Violation(s): 18 U.S.C. §§ 1962(d); 2339B; 1503; 401(3)

A true bill,

_____
Foreman

Filed in open court this 19th day of August A.D. 2004

**MICHAEL W. DOBBINS**

_____
Clerk

Bail. $ _____