**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED

AUG 2 3 2004

JUDGE AMY ST. EVE
United States District Court

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 03 CR 978 |
| | ) Judge Amy J. St. Eve |
| ABDELHALEEM ASHQAR, | ) |
| | ) |
| Defendant. | ) |

DOCKETED

AUG 2 7 2004

### DEFENDANT ASHQAR'S EMERGENCY MOTION TO REINSTATE
### THIS COURT'S RELEASE ORDER OF NOVEMBER 3, 2003

Defendant, **ABDELHALEEM ASHQAR**, by his attorneys, **THOMAS ANTHONY**

**DURKIN** and **MICHAEL J. KENNEDY**, pursuant to The Bail Reform Act of 1984, 18 U.S.C.

§ 3142 *et seq.*, as well as the Due Process, Effective Assistance of Counsel, and Excessive Bail

clauses of the Fifth, Sixth and Eighth Amendments to the Constitution of the United States, and

the Separation of Powers clauses as enunciated by Articles One, Two and Three, respectfully

moves this Court for the entry of its order reinstating this Court's November 3, 2003, Order

Setting Conditions of Release forthwith.

In support of this motion, Defendant, through counsel, shows to the Court the following:

1.      On November 3, 2003, pursuant to the government's agreement, this Court issued

its order setting conditions of release for Defendant.  A copy of said order, marked Defendant's

Exhibit 1, is attached hereto and made part hereof.[1]  The essential conditions of the release order

require the execution of a $1,000,000.00 bond, secured by certain property, along with home

---

[1] The order is signed by Magistrate Judge Arlander Keys.  Based upon conversations with Defendant's
prior counsel, Stanley Cohen, it is undersigned counsel's understanding that the government agreed to the essential
terms of a bond proposal before this Court, and that the matter was referred to Magistrate Keys because of this
Court's schedule and the need to iron out issues with respect to the value of properties being proposed for surety.



incarceration monitored by the electronic monitoring program and 24 hour notice of any intent to and itinerary for travel from Defendant's home in the Eastern District of Virginia to this District for court appearances or to visit his attorneys either in Chicago or New York.

2. As this Court is well aware, Defendant has consistently abided by the conditions of his release for the nine months the release order has been in effect. A copy of this Court's docket sheet reflecting the same, along with this Court's various orders making minor adjustments in some of the conditions of the release order is also attached hereto and made part hereof, as Exhibit 2. As the Court is also aware, at the government's request, the status hearing previously scheduled for August 11, 2004, in which Defendant's presence had even been waived, was reset until August 24, 2004. The ostensible purpose of moving the date was to provide the government with more time to provide the Court with "a definitive answer" with respect to the second superseding indictment that had been awaiting approval by the Department of Justice in Washington.

3. For sure, a definitive DOJ answer was announced, but hardly in the manner counsel expected when he agreed to the continuance. Notwithstanding this Court's release order, on August 19, 2004, while this Court was not sitting because of its vacation schedule, the Department of Justice and/or the U.S. Attorney's Office[2] caused the issuance of an arrest warrant based upon the return of its long anticipated Second Superceding Indictment returned by the

---

[2] It is anyone's guess who made the decision to arrest Ashqar, although all intuitive indications point to Washington. Intuition is the only thing anyone can use when attempting to determine what goes on these days in a "terrorism" investigation, however, since the line assistants all have strict orders to say nothing and do as they are told. Sadly, there was a day in this district when this U.S. Attorney's Office prided itself for being able to stand up to the Department of Justice and do what it thought was right in a given case. If nothing else, one would have thought that prior bounds of professional decorum would have entitled counsel to the courtesy of a telephone call immediately after the arrest, rather than having to hear about it from the Defendant's hysterical wife as is more fully discussed herein. The forum shopping is yet another matter.

2

grand jury the same day. A copy of the arrest warrant, marked Defendant's Exhibit 3, is also attached hereto and made part hereof. As the Court can see, this warrant is issued by one Karen Tapia, a Deputy U.S. Clerk. The warrant was executed that same day by Special Agent Monica Trachsel of the FBI, who along with several other agents arrested Defendant at his home in the Eastern District of Virginia where he was detained as this Court had ordered. While the agents were taking Defendant from his home they informed his hysterical wife that she could call Dr. Ashqar's attorney as "he would know what this was all about."[3]

4.     On Friday, August 20, 2004, Defendant was brought before Magistrate Judge Theresa Buchanan of the Eastern District of Virginia for an initial appearance at which time Defendant waived his right to a removal proceeding. Later that same afternoon, a detention hearing was held before Judge Buchanan in which undersigned counsel Durkin was granted leave to appear by telephone. In the course of the hearing counsel submitted both this Court's release order and a copy of the docket sheet, Exhibits 1 & 2, and based upon this Court's release order, entered a procedural objection to Defendant's arrest and the bail proceedings being conducted in the Eastern District of Virginia. Magistrate Buchanan noted counsel's objection and overruled it, suggesting such objection was better raised in this district.

5.     After listening to arguments from both sides, Magistrate Buchanan then ordered

---

[3] Mrs. Ashqar immediately proceeded to telephone undersigned counsel Durkin at approximately 6:45 pm CST, Thursday evening, August 19th, and related the above statements of the FBI. Counsel informed her that he did not know what this was about other than his speculation that the grand jury may have returned the superceding indictment that had been the subject of speculation in open court at the last two court appearances. Counsel told Mrs. Ashqar that he could not imagine why the government would have chosen to arrest Defendant, and that he would check into it. Counsel then attempted to verify what had occurred. When counsel could not reach either of the Assistants assigned this case, or the U.S. Attorney himself, he was able to verify through the FBI office in Washington, D.C. that Defendant had, in fact, been arrested. The FBI refused to disclose, however, why or on what basis Defendant was arrested. Later that evening at approximately 9:30 pm, AUSA Ferguson returned counsel's call and informed him that Defendant had been based upon the return of the second superseding indictment.

Defendant detained. Neither side presented any evidence, other than the two defense exhibits referred to above, and the Magistrate found that the allegations of the second superseding indictment presented a basis to find both that Defendant was a risk of flight and a danger to the community.

6. Considerable discussion was also had about whether or not Defendant could be returned to this district in time for the status hearing on Tuesday, August 24, 2004. Counsel had argued that the government was well aware of his previously scheduled trip to China from August 27 to September 7, 2004, and that it was imperative that he personally handle the bail proceedings before this Court. The Virginia Assistant U.S. Attorney suggested to Magistrate Buchanan that this should not be a problem as it would be possible for Defendant to be brought back to Chicago immediately in the custody of the FBI. When undersigned counsel told the Magistrate that this contradicted what he had been told by AUSA Ferguson, the Magistrate agreed, and said she did not think it would be possible for Defendant to be in Chicago this week. At the present time, Defendant remains incarcerated in Alexandria, Virginia.

7. Counsel would submit that pursuant to the express terms of 18 U.S.C. §§ 3142 & 3145, the only lawful procedure available to the government to revoke or modify the conditions of Defendant's release was for the government to file a motion for revocation of the order with this Court. The release and detention statutes, on their face, could not be clearer. §3142©)(3) permits the judicial officer who ordered the release to amend the order at any time to impose additional or different conditions of release. § 3145 sets forth the procedures for the review or appeal of a release order. Instructively, for the government to review a release order entered by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the

4

offense other than a Federal appellate court, the government must file such a motion *with the court having original jurisdiction over the offense.* § 3145(a)(1) (emphasis added). No where is it suggested, or even remotely inferred, that a lawfully executed release order can be trumped by the issuance of an warrant based upon the filing of a superseding indictment.

8. Nor, obviously, could such a practice ever be constitutionally sanctioned in the first place. No judicial release order would ever have any binding effect if the government could simply return to the grand jury the next day, return a superseding indictment, and re-arrest the released defendant on a warrant rubber stamped by a deputy in the clerk's office.

9. Defendant's research has uncovered little case law on the topic, which may not be surprising since in thirty-two years of practice, undersigned counsel has never heard of someone admitted to bail being arrested on a superseding indictment. Nevertheless, the topic appears to have been discussed at least in a different context by the Seventh Circuit in an opinion written by then Circuit Judge John Paul Stevens in *United States v. Holmes,* 452 F.2d 249 (7th Cir. 1971). There no warrant had been issued on the superseding indictment, but the defendant was arrested nonetheless. In addressing the effect of a search made ostensibly incident to the arrest, Justice Stevens noted that once the defendant had been admitted to bail, no purpose could have been served by rearresting him. He pointed out, instructively for our purposes: "Although at large, in contemplation of the law [defendant] remained in custody. In historic terms, he was the prisoner of his bail." 452 F.2d at 261, citing, among others, *Taylor v. Taintor,* 83 U.S. (16 Wall) 366, 371, 21 L.Ed. 287. ("The custody of bail is a continuance of the original imprisonment.") *Commonwealth v. Miller,* 105 Pa.Super.56, 59 160 A. 240,241 ("Upon admission to bail, the accused is then not only in the custody of his bail, but he is also in the custody of the law.")

5

10.     While the *Holmes* opinion goes on to state that "additional charges might have made a rearrest proper, to be followed either by termination of bail or a modification of its conditions," *id.,* it seems virtually self evident that any termination of bail or modification of its conditions can only be done by the judge who originally set bail in the fist instance.

11.     Accordingly, all Defendant seeks at this moment is the ability to return to this district for the status hearing on Tuesday, August 24, 2004, as scheduled, so that he and his counsel can convince this Court that revocation of his release is not appropriate and that conditions of release remain that can satisfy the requirements of the statute. To accomplish this, all that would be necessary is for this Court to modify the conditions of Defendant's original release order to those proposed to Magistrate Buchanan; *i.e.,* that Defendant be released on the same bond with the additional condition of home incarceration, with the only exception from home incarceration being permission to travel from Virginia to Chicago for purposes of the Tuesday hearing.

12     Without belaboring Defendant's argument that revocation of the release order is inappropriate, several points are worth mentioning briefly. First and foremost, as this Court is well aware, it was no secret that the superseding indictment was forthcoming. Not only was Defendant made aware of that fact after the side bar conference held with the Court on June 21, 2004, undersigned counsel and Mr. Kennedy had been advising Defendant from the beginning of their representation that they viewed the criminal contempt charge as merely a "holding charge" to permit the government time to complete whatever grand jury work it deemed appropriate so that it could return an indictment charging substantive "terrorism" related charges. For that matter, Defendant was informed of the same by the FBI when they interviewed him in 1996.

6

Nonetheless, Defendant always insisted that he wished to fight the charges which he deemed to be politically motivated, and never once contemplated fleeing.

13. Second, while there was an avalanche of national publicity surrounding the return of the new indictment, much if not all of it can be seen to be quite stale, the majority of the allegations dealing with events occurring in the early to mid-1990's. Even more remarkably, on Sunday, August, 22, 2004, two days after the return of the new indictment, the *Chicago Tribune* published a detailed article by reporters Todd Lightly and Laurie Cohen stating that this very investigation was closed by the FBI in 2000 because of "turf warfare inside the bureau, political sensitivity about Saudi Arabia, and bureaucratic bungling." The article claims to be based upon information gathered from "former and current officials involved with the case," and even goes on to quote a retired FBI agent and the former Assistant U.S. Attorney in charge of the case. A copy of the article, marked Defendant's Exhibit 3, is attached hereto and made part hereof. This article, unto itself, should dismiss any serious claim the government may now attempt to make that Defendant is a danger to the community. This presumes in the first place that there is any merit to the argument advanced before Magistrate Buchanan that Defendant is a danger to the community "in the larger sense" — whatever that may be. While acknowledging that neither Hamas nor any other Palestinian political entity has ever claimed responsibility for any violence in the United States, Magistrate Buchanan accepted the government's argument that Dr. Ashqar was nonetheless a danger to the community "in the larger sense of the term community." So far as counsel can determine, however, Congress has not yet seen fit to expand the definition of "community" in the detention statutes to international political enemies of our allies.

14. Further, even a cursory reading of the new charges reveals the significant disparity

7

in the nature of the allegations between those attributed to Dr. Ashqar and those attributed to co-defendants Salah and Marzook. Most notably, and unlike Salah, Dr. Ashqar is not charged with a substantive count of providing material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B. Nor are there allegations against Dr. Ashqar with respect to travel to the Middle East or personal involvement with weapons or actual violence.

15. More to the point, while there can be no question that Defendant has been an ardent and vocal supporter in the U.S. of the illegitimacy of the Israeli military occupation of the West Bank and Gaza, and the refusal of the Israelis to grant Palestinian statehood, such political activism is a long way from proof of knowing and intentional agreement to carry out the violence alleged in the indictment — assuming even that the attempt to criminalize such political conduct outside its borders is an appropriate invocation of the jurisdiction of a United States court.

16. Accordingly, Defendant prior release order should be reinstated forthwith.

Respectfully submitted,

**THOMAS ANTHONY DURKIN,**
One of the Attorneys for Defendant,
Abdelhaleem Ashqar.

**DURKIN & ROBERTS**
53 W. Jackson Blvd., Ste. 615
Chicago, IL 60604
(312) 922-8980

**THE LAW OFFICES OF MICHAEL KENNEDY**
419 Park Avenue South, 16th Floor
New York, New York 10016
212-935-4500

8

# See Case File For Exhibits