FILED

JUN 14 2005

MICHAEL W. DOBBINS
CLERK U.S. DISTRICT COURT

RECEIVED
JUN 1 4 2005
CLERK, MICHAEL W. DOBBINS
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
      v.                       )      No. 03 CR 978
                               )      Judge Amy J. St. Eve
ABDELHALEEM ASHQAR,            )
                               )
            Defendant.         )

**DEFENDANT ASHQAR'S RULE 14(a) MOTION FOR RELIEF FROM
PREJUDICIAL JOINDER WITH CO-DEFENDANTS SALAH & MARZOOK**

Defendant, **ABDELAHALEEM ASHQAR**, by his attorneys, **THOMAS ANTHONY**

**DURKIN, MARIAH E. MORAN,** and **MICHAEL KENNEDY**, pursuant to Rule 14(a) of the

Federal Rules of Criminal Procedure and the Due Process Clause of the Fifth Amendment to the

Constitution of the United States, respectfully moves this Court for a severance and separate trial

from Co-Defendants, Marzook and Salah, on the grounds that the gross disparity of the evidence

between him and his Co-Defendants, Salah and Marzook, presents the danger of extreme

spillover prejudice to Defendant Ashqar that cannot be cured by limiting instructions, or any

other form of relief the Court may attempt to fashion short of a separate trial.

In support of this motion, Defendant, through counsel, shows to the Court the following:

1.     Ashqar is charged in a five count indictment with allegations that he

engaged in a conspiracy to violate 18 U.S.C. § 1962(C) of the Racketeering, Influence, and

Corrupt Organizations Act ("RICO") to finance the affairs of Hamas (Count One); wilfully

disobeying a lawful order of the Court on June 25, 2003, to testify before the Special April 2002

Grand Jury (02 GJ 369) despite a grant of immunity and issuance of a Compulsion Order in

violation of 18 U.S.C § 401(3) (Count Four); and corruptly influencing, impeding, and obstructing the due administration of justice by refusing on June 25, 2003, to testify before the Special April 2002 Grand Jury in violation of 18 U.S.C. §1503 (Count Five).

2.    Co-Defendants Marzook and Salah are also named as defendants in the RICO conspiracy (Count One), and seven other purported Hamas members in the United States and abroad are specifically named but not charged. Those named but not charged are: Khalid Mish'al; Mohammed Qassem Sawalha; Adel Ahmed Awadallah; Salah Al-Arouri; Sheik Jamil Hamami; Hassan Salameh; and, Ismael Selim Elbarasse; (Second Superseding Indictment, ¶1,(L)(I-vii)). Ten other purported co-conspirators are described but anonymously named Co-conspirators A through J. ( Id., at ¶1(L)(viii-xiii))

3.    Salah is solely named in Count Two which charges him with providing material support and resources to a designated Foreign Terrorist Organization, namely, Hamas, in violation of 18 USC § 2339B. Salah is also named in another count for filing false answers to interrogatories in a civil suit related to the provisions of funds to support Hamas in violation of 18 U.S.C. § 1503 (Count Three).

4.    As this Court is aware, the second superseding indictment and discovery materials also indicate that after having been arrested in Israel on January 25, 1993, co-defendant Salah confessed to the Israelis. Among other things, the indictment claims that Salah "attempted to trade information [with the Israelis] given to him by co-Defendant Marzook and Co-conspirator G regarding the burial location of an Israeli soldier, Ilan Sa'adon, who was murdered in a Hamas terrorist attack in 1989, in return for the release of numerous Hamas members." (Id., ¶ 24(Y))

2

5.    The fact that Ashqar is not charged in the material support count is, in this post-September 11th world, sufficient basis in and of itself to grant Ashqar a trial separate and apart from co-defendant, Salah – to say nothing of having to sit through a trial in which the person charged with material support's confession is read to the jury. It is absolutely inconceivable that no matter what lengths the Court goes to in *voir dire*, or for that matter in limiting instructions throughout trial, that Ashqar – a devout Muslim and a long time vocal Palestinian activist – can obtain a fair trial seated in the same courtroom with fellow Muslim Salah once it is announced to the venire that the government has charged Salah with providing material support to a Foreign Terrorist Organization, and evidence is introduced that he confessed to, among others things, financing the purchase of weapons, facilitating the training of Hamas recruits, and conferring with high-ranking Hamas leaders regarding specific planned terrorist attacks as well as the fact that he attempted to barter information on the burial location of a dead Israeli soldier in exchange for the release of Hamas prisoners. Pretend as we might that we can take prospective jurors answers on voir dire at face value, or the similar inference that jurors are presumed to follow the instructions of the court, this simply is asking too much out of any jurors under the circumstances of the volatile and inflammatory allegations of terrorism set forth in this indictment.[1]

---

[1] For but one example, as recently as September 2003, it was reported that an startlingly large percentage of the people in the United States believed that Saddam Hussein had something to do with the September 11th attacks at the World Trade Center and the Pentagon despite the fact that the Bush administration and congressional investigators said that there was no evidence of any such link. *See*, Dana Millbank, *Hussien Link to 9/11 Lingers in Many Minds*, WASH. POST, September 6, 2003, at p. A1. Similar disposition regarding Muslims in general has also been widely documented in the post-Sept 11th terror dominated culture. For example, the increase in reported hate crimes against Muslims in the United States has not been stemmed in the years since the September 11th attacks. In fact, recent reports indicate that the rate of reported hate crimes against Muslims in the U.S. are on a sharp incline. *See, e.g.*, Andrea Elliot, *Study by Muslim Group Says Bias Crime Up 50% in 2004*, N.Y. TIMES, May 12, 2005, at p. B5 *see also*, John Files, *National Briefing Washington: Anti-Muslim Incidents Increase*, N.Y. TIMES, May 4, 2004, at p. A26.

6.      To further complicate matters, the government has plead the material support statute as one of the racketeering activities set forth in the RICO conspiracy charged in Count One. *Id.*, at ¶ 3(f): "18 U.S.C. § 2339B (providing material support or resources to designated foreign terrorist organizations and attempt and conspiracy to do so.") However, in the substantive material support count charging Salah, Count Two incorporates and realleges only paragraphs 24 (OO) through 24 (AAA). None of these paragraphs mentions or names Ashqar, but instead only refers to activity between Salah and Individual A. Oddly enough, Individual A is not charged in Count One; and is, therefore, not one of the RICO co-conspirators. Thus, without a severance, the Court will be in the absurd position of trying to fashion instructions explaining to the jury that evidence with respect to the activity between Salah and Individual A can be used only against Salah with respect to Count Two, while at the same time trying to fashion other instructions regarding the evidence with respect to the material support allegation, and the "attempt and conspiracy to do so," alleged in Count One – which the government will surely be attempting to use against Ashqar.[2]

7.      Further, as if that were not enough of a problem, in addition to the confession and material support allegations, the gross disparity of the evidence and the potential for prejudicial spillover between Salah and Ashqar in the RICO conspiracy count (Count One) in which they are jointly charged is patently obvious from a careful reading of the indictment.[3] Count One alleges

---

[2] This problem may well also present misjoinder issues under Rule 8(a), and Defendant would request leave to file such a motion on or before the date for other motions concerning the indictment, July 13, 2005.

[3] Gross disparity in the evidence exists between Ashqar and Marzook as well. It is apparent from a reading of the indictment that Marzook and Salah worked together closely, often times with Salah taking direction directly from Marzook. *See, e.g..,* ¶ 24 (J),(K). While no such connection can be claimed to have existed between Ashqar and Marzook, oddly enough Ashqar finds himself to be the only other "co-conspirator" sitting at the defense table with Salah.

fifty-five (55) overt racketeering acts. Of those fifty-five overt acts, Ashqar is named in only eleven (11), two of which relate to his grand jury refusals to testify in 1998 and 2003. Of the nine other overt acts, all are alleged to have occurred between August 1993 and March 1994 (Overt Acts, ¶¶ 24 M, BB, CC, DD, EE, FF, GG, & HH), save only Act B which is a general statement of intent allegedly beginning in August of 1988. Most of these acts pertain to financial transactions in which Ashqar is purportedly involved.

8.       Co-Defendant Salah, on the other hand, is alleged to have played a substantial role in the inner-workings of Hamas and to have directly participated in acts of violence. The second superseding indictment attributes numerous acts of violence directly and indirectly to Salah including the following:

- As a member of the U.S.-based Hamas Security Committee, Salah attempted to recruit Palestinian men studying in the U.S. to join Hamas. In doing so, Salah collected information on potential recruits that included their expected dates of return to the West Bank and Gaza, area of study, and their capacity to participate in terrorist activities against Israel. (*Id.*, ¶ 24(C)).

- Provided candidates of Hamas' terrorist activities advanced training in military operations and bomb-making. In doing so, Salah purchased airline tickets for travel in the Middle East so that these candidates could receive training from Hamas military operatives. (*Id.*, ¶ 24 (D), (E)).

- Met with a high-ranking Hamas military leader in the West Bank to discuss the need to strengthen terrorist cells in the West Bank and the murder of a Palestinian proponent of the U.S. initiated peace talks with Israel. (*Id.*, ¶ 24(G)).

- Provided $50,000 to a Hamas member headquartered at Hebron University in the West Bank for the purchase of weapons and for other military supplies. (*Id.*, ¶ 24( H)).

- Acted as conduit between a Hamas leader in the Middle East and Marzook regarding the names of certain collaborators that needed to be killed and the need

for additional funds to facilitate planned terrorist attacks. (*Id.*, ¶ 24(J)).

- Conferred with a high-ranking Hamas military leader who was responsible for facilitating several deadly terrorist attacks carried out in Israel about specific planned terrorist attacks. (*Id.*, ¶ 24(V)).

- Met with Hamas leaders to discuss various terrorist attacks carried out by Hamas and agreed to provide additional funds in order to aid in the continuing terrorist activity and the purchase of additional weapons. (*Id.*, ¶ 24(X)).

- In an effort to gain the release of numerous Hamas members, attempted to trade information regarding the burial location of an Israeli soldier who had been murdered in a Hamas terrorist attack. (*Id.*, ¶ 24(Y)).

- Directed an emissary to travel to Israel and the West Bank in order to scout specific locations in and around Jerusalem for suitability as targets for Hamas terrorist attacks. (*Id.*, ¶ 24(TT)).

9. Moreover, unlike Ashqar, co-defendant Salah is alleged to have held a position of authority within Hamas in that among other things he met with leaders of the military and political branches of Hamas, facilitated the training and support of Hamas terror operatives and conferred with Hamas leaders about active plans for terrorist attacks against Israel and initiatives to derail any efforts of peace with Israel. For instance, the second superseding indictment contains allegations that Salah:

- was a member of United States-based Hamas Security Committee (*Id.*, ¶ 24(G)).

- recruited and facilitated the training of Palestinian men to participate in Hamas' terrorist activities against Israel (*Id.*, ¶ 24 (C)-(E)).

- conferred with other Hamas members regarding the need to revitalize Hamas terrorist operations in the West Bank. (Id., ¶ 24 (F)). Specifically, Salah met with a high-ranking Hamas military leader about the reorganization of Hamas terrorist cells in the West Bank, Hamas personnel issues, and specific planned terrorist attacks. Additionally, Salah met with Hamas' leader, Sheik Jamil Hamami. (*Id.*, ¶ 24 (G), (I), (V)).

- attempted to have a false passport made for a high-ranking Hamas military leader

who was responsible for facilitating several deadly terrorist attacks carried out in Israel. (*Id.*, ¶ 24(N)).

▸ traveled to the West Bank and Gaza Strip to assess the ability of Hamas to continue to carry out terrorist attacks and to deliver money to Hamas members in the individual regional cells within the West Bank and Gaza Strip. (Id., ¶ 24 (Q)).

10. Similarly, co-defendant Marzook is alleged to have worked in the higher echelons of Hamas in that he held positions of power that allowed him to set policies for Hamas' initiatives in the Occupied Territories and coordinate attacks by the Al-Qassam Brigades – Hamas' military wing. Specifically, Marzook is alleged to have been the Deputy Chief of Hamas' Political Bureau and to have functioned as one of the highest ranking leaders in the organization. As part of this role, Marzook operated, maintained, and disbursed funds from U.S. bank accounts to foreign banks which were then frequently disbursed by co-defendant Salah in a variety of manners to parties associated with Hamas and the Al-Qassam Brigades. (*Id.*, ¶1(I),(J); ¶ 24(C)-(F), (K), Discovery Documents, ASH 294). Moreover, following the deportation of some 400 Palestinian men from the Occupied Territories in December 1992, Marzook made public statements about his willingness to escalate the violence in the Occupied Territories towards Israel and he then traveled, with Salah, to the territories for the purpose of disbursing monies to affected families and regional cells of Hamas in order to further Hamas' goals. (Id., ¶ 24 (P)-(Q)).

11. Additionally, co-defendants Marzook and Salah were also made parties to a widely-publicized[4] and successful federal civil suit filed in this district captioned *Boim v. Quranic Literacy Institute, et.al*, No. 00 C 2905, which related to the death of an American

---

[4] *See, e.g.*, Matt O'Connor, *$156 Million Award in Terrorist Killing*, CHI. TRIB., Dec. 9, 2004, at 1; Gretchen Ruethling, *Judge Awards $156 Million In Terror Death*, N.Y. TIMES, Dec. 9, 2004, at A1.

citizen, David Boim, as a result of a drive-by shooting in 1996 for which Hamas allegedly made public declarations accepting responsibility for his death. (*See*, Minute Order dated December 10, 2004, entering jury verdict against Salah, et al, in the amount of $52,000,000.00, attached hereto as Exhibit A). The Boim drive-by shooting in the West Bank in listed as Overt Act 24 (II)(5). Salah is also alleged to have made what were later found to be false statements regarding his relationship with Marzook, his financial dealings with Hamas, and his meetings with Hamas members. (*Id.*, ¶ 24(BBB)). Defendant Ashqar was not named as a party to the *Boim* action, but will no doubt be tarred by the same brush, and the Court will once again be faced with crafting complex and esoteric limiting instructions over this issue as well.

12.     Counsel would submit, therefore, that the allegations against Ashqar so differ in their entirety from those of co-defendants Salah and Marzook that Ashqar should be severed from his co-defendants pursuant to Rule 14 of the Federal Rules of Criminal Procedure due to the extreme risk of prejudicial spillover which results from the gross disparity in the evidence among the defendants.

13.     The Federal Rules of Criminal Procedure allow for relief from prejudicial joinder. It states in relevant part:

> (a)     Relief. If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.
>
> (b)     Defendant's Statements. Before ruling on a defendant's motion to sever, the court may order the government to deliver to the court from in camera inspection any defendant's statement that the government intends to use as evidence.

14.     Although a court may find that defendants are properly joined under Rule 8(b),

severance under Rule 14 may be required when "there is serious risk that a joint trial would compromise a specific right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). The *Zafiro* Court identified those risks to include the situation when the evidence that a jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against the defendant. *Id.* Likewise, the Court explained that in cases where defendants are tried together in a complex case and have markedly different degrees of culpability, the risk of prejudice is heightened and severance may be necessary. *Id.*

15.    In determining whether severance is necessary, the court is required to "balance 'the benefit of judicial efficiency in a joint trial with the risk of prejudice to a defendant.'" *United States v. Stoecker*, 920 F.Supp. 876, 884 (quoting *United States v. Gaines*, 988 F.2d 750, 781 (7th Cir. 1993); *see also United States v. Rollins*, 301 F.3d 511, 517, n.1 (7th Cir. 2002).

16.    Counsel recognizes that in most cases the mere fact that there is more evidence against one defendant than another or that the evidence against a co-defendant is more highly incriminating is not sufficient grounds for a severance. *See United States v. Abdulhaq*, 246 F.3d 990, 992 (7th Cir. 2001)(finding that "spillover" claims do not require severance). However, the Seventh Circuit has acknowledged that instances where there is a great disparity in the weight of the evidence against the defendants, severance under Rule 14(a) may be necessary. *See United States v. Garner*, 837 F.2d 1404, 1413 (7th Cir. 1987)(identifying gross disparity in the weight of evidence against defendants as an important situation under which Rule 14 severance may be required).

9

17.     In *United States v. Stoecker*, 920 F.Supp. 876 (N.D. Ill. 1996), Judge Gettleman relied in part on *Garner* in granting defendant's motion to sever his trial from his co-defendants after finding a gross disparity in the evidence between defendant and his co-defendants. *Id.* at 886. In that case, the court found that severance was justified, in part, because the severed defendant was not charged in the overall scheme to defraud with his co-defendants and was only charged in three counts in a fifty-three count indictment. *Id.*

18.     Although Ashqar is charged in the RICO conspiracy contained in Count One, as discussed at length above, the gross disparity of evidence between he and his co-defendants is patently obvious on the face of the indictment. Ashqar is only named in eleven of the fifty-five overt racketeering acts – and, of that eleven, two refer to his refusals to testify before the grand jury in 1998 and 2003 and are the subjects of Counts Four and Five, the remaining acts pertain to financial transactions in which Ashqar was purportedly involved. More importantly, it is evident in reading the second superseding indictment that co-defendants Salah and Marzook are alleged to have each played a substantial role in supporting and expanding Hamas and its terrorist efforts against Israel and the peace process. In fact, the government will likely seek to introduce Salah's confession in which he admitted working on behalf of Hamas to further its military goals. By being joined with Salah, Ashqar will be prevented from calling Salah as a witness or to cross-examine him regarding the contents of his confession and the negative inferences attributable to Ashqar contained therein.

19.     Counsel would also ask in that regard, pursuant to Rule 14(b), that this Court order the government to deliver a translated copy of Salah's confession to this Court for an *in camera* inspection so that this Court may consider the contents of Salah's confession prior to

10

ruling on this motion.

20.     Moreover, the long-standing policy in favor of joint trials for the benefit of judicial economy will be frustrated if Ashqar's trial is not severed from his co-defendants. Counsel submits that in light of the joinder of Ashqar with Salah and Marzook, the amount of limiting instructions and side bar conferences that will be required to protect Ashqar's trial rights will cancel out any judicial economic benefits sought in trying the defendants jointly.

21.     The likelihood that the jury will impute to Ashqar the vast amount of evidence attributable to his co-defendants is great. It is unrealistic to think that Ashqar will be able to have a fair trial when there exist such a sizeable disparity of evidence between him and his co-defendants. The risk that Ashqar will suffer a transference of guilt merely due to his limited association with his co-defendants is high — particularly in light of substantial defense evidence of Ashqar's longstanding and lawful advocacy against the illegal Israeli occupation in Gaza and the West Bank. As a result, Ashqar will most certainly suffer unfair and undue prejudice. Thus, counsel strongly submit that this case presents an exception to the general rule in favor of joint trials and that severance of Ashqar's from his co-defendants is proper.

11

Respectfully submitted,

**THOMAS ANTHONY DURKIN,**

**MARIAH E. MORAN,**

**MICHAEL KENNEDY,** Attorneys for
Defendant Ashqar.

**DURKIN & ROBERTS**
53 W. Jackson Blvd., Suite 615
Chicago, IL 60604
312-913-9300

**LAW OFFICES OF MICHAEL KENNEDY**
419 Park Avenue South
16th Floor
New York, NY 10016
212-935-4500

12

Case 1:00-cv-02905   Document 667   Filed 12/08/2004   Page 1 of 1

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2905 | **DATE** | 12/8/04 |
| **CASE TITLE** | | Boim vs. Quranic Literacy | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____.   Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)■ [Other docket entry] Trial ends. Jury returns verdict in favor of Plaintiffs and against the defendants Quaranic Literacy Institute, Holy Land Foundation for Relief and Development, Islamic Association for Palestine, American Muslim Society and Muhammed Abdul Hamid Khalil Salah in the amount of $52,000,000 (fifty-two million dollars). The Court hereby triples the amount of the jury verdict to One Hundred Fifty Six Million Dollars ($156,000,000) plus the reasonable attorneys fees and costs of this action.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | Document Number |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | DEC 1 0 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| AC6 | courtroom deputy's initials | 2004 DEC -9 AM 10:13 | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |