IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **No. 03 CR 978** |
| v. | ) | |
| | ) | **Judge Amy J. St. Eve** |
| | ) | |
| MOUSA MOHAMMED | ) | |
| MARZOOK, *et al.*, | ) | |
| | ) | |
| **Defendants .** | ) | |

## MUHAMMAD SALAH'S RESPONSE TO THE GOVERNMENT'S MOTION FOR AN ANONYMOUS JURY

**INTRODUCTION**

In a cynical attempt to further poison the well from which Mr. Salah must draw the jurors for his trial - already overflowing with ethnic, religious and political prejudices - and in furtherance of its efforts to shroud its politically motivated prosecution in secrecy, the government has requested an anonymous jury. In doing so the government presumes the guilt of the defendants (the evidence "demonstrate[s] that the defendants were part of an organized group whose purposes were achieved through criminal activity . . . in support of the military activities of a terrorist organization." Govt's Motion at 5) and relies upon the actions and opinions of the current Hamas elected government of the Palestinian Territories and other unknown alleged Hamas persons, which the government knows full well have nothing to do with the defendants or the charges against them.

1

The government's pleading, while recognizing that Hamas has never carried out any actions in the United States, recklessly and speculatively predicts some future possibility of Hamas intimidating jurors in this case, even though by the government's own indictment, Mr. Salah's and Dr. Ashqar's alleged involvement ended years ago. Nevertheless, the government seeks to piggyback on the issue of fear and terrorism to justify this extraordinary and presumptively prejudicial request. As the Seventh Circuit warned in *United States v. Mansoori*, 304 F. 3d 635, 650 (7th Cir. 2002), "An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence." (quoting *United States v. Ross*, 33 F.3d 1507, 1519 (11th Cir. 1994)).

Given the extraordinary prejudice permeating the prosecution of Palestinian Muslims alleged to have conspired with Hamas, and the secret proceedings which have already seriously tainted this prosecution, the further prejudice to the defendants' presumption of innocence and their right to a full and fair jury selection process inherent in an anonymous jury clearly outweighs the speculative and highly inflammatory claims in the government's motion.

## I.     THERE IS NO FACTUAL BASIS FOR THE GOVERNMENT'S REQUEST

The government's request for an anonymous jury relies on the claims in its indictment, but fails to acknowledge that the main allegations of Hamas association are based upon alleged acts which took place over a decade ago, were prior to the time that Hamas was designated "a foreign terrorist organization," and occurred *during a period in which Israel and the United States had diplomatic contacts with Hamas.* There is no evidence in the indictment or otherwise that Mr. Salah or his co-defendant Dr. Ashqar have any current involvement with Hamas or any

other Palestinian resistance organization. In fact, as to Mr. Salah the only allegations of any Hamas involvement post-designation is based upon the highly suspect claims of a discredited informant (individual "A"), which took place almost 7 years ago and the alleged false interrogatory answer in the civil *Boim* case. Rather than any evidence which shows an on-going involvement in Hamas affairs and responsibility for their policies and decisions, the record in this case is devoid of a factual basis to justify the resort to the use of an anonymous jury. The government's showing does not rise to the level dictated by the Seventh Circuit that "empaneling an anonymous jury is an extreme measure that is warranted only where there is a strong reason to believe that the jury needs protection." *Mansoori*, 304 F. 3d at 650; *see also United States v. Crockett*, 979 F.2d 1204, 1215 (7th Cir. 1992); *United States v. Salavatore*, 110 F.3d 1131, 1136 (5th Cir 1997) (anonymous juries are a "drastic measure that should be utilized only in limited circumstances."); *United States v. Millan-Colon*, 834 F. Supp. 78, 82-86 (S.D.N.Y. 1993); *United States v. Corrao*, U.S. Dist. LEXIS 2932 (S.D.N.Y. 1988).

While the government must concede that Hamas has never used force or violence in the United States, it nonetheless argues that Hamas has never been "so prominently targeted in an American criminal prosecution," and that this proven track record "should not be regarded as a completely reliable indicator of its capacities and proclivities in the context of these proceedings." (Govt's Motion at 5, n.1). The indictment against Mr. Salah and Dr. Ashqar - the defendants who will be standing trial - despite former Attorney General Ashcroft's national press conference and the government's secrecy and "terrorism" hoopla, can hardly be viewed as targeting Hamas or its leaders, and this Court cannot strip away the defendants' rights to the presumption of innocence, to a properly empaneled jury drawn from a fair cross-section of the

community, and to an open and fully informed jury selection process based upon such rank speculation.[1] *See Mansoori*, 304 F.3d at 650 (An anonymous jury "deprives the defendant of information that might help him to make appropriate challenges - in particular, peremptory challenges - during jury selection."); *see also In re Globe Newspaper Co.*, 920 F.2d 88, 97-98 (1st Cir. 1990) ("While anonymity is acceptable in the exceptional case where there is a particular need for it, the prospect of criminal justice being routinely meted out by unknown persons does not comport with democratic values accountability and openness.").

This court must base a decision to empanel an anonymous jury "on more than mere allegations or inferences of potential risk," *Salvatore*, 110 F.3d at 1136, and cannot allow the government to engage in preemptive strikes against the right to a trial by jury based upon speculation alone.

Further, the alleged "witness tampering" justification is a strawman argument. There is no evidence that a witness in this case was ever directly contacted by anyone associated with Mr. Salah - a xerox of a news article about "individual A" and his perceived unreliability was sent as an apparent warning to people who might be victimized by the government's disinformant and in no way raises a colorable claim of witness tampering. In any event, there is no evidence proffered by the government that anyone affiliated with Hamas has threatened any witness or is interested in these proceedings or their outcome. Again, just to say it does not make it so.

---

[1] If the government's fanciful predictions of what might happen in the future were not enough, it also relies on an April 17, 2006 bombing in Israel which is not even attributed to Hamas, but which the Hamas government did not condemn - (certainly the defendants are not responsible for statements of Hamas made years after their indictment and arrest) - and a ten year old "official communique" from Hamas warning of "serious repercussions" to U.S. interests if Abu Marzook was extradited to Israel. Just because the government says it, it does not make it so.

## II.     THERE IS NO LEGAL BASIS FOR THE GOVERNMENT'S REQUEST

The ABA Principles for Jury and Jury Trials make it clear that an anonymous jury should be used in only the clearest situations where there is evidence that a juror faces actual intimidation:

> Courts should limit the use of anonymous juries to compelling circumstances, such as where safety of the jurors is an issue or when there is a finding by the court that efforts are being made to intimidate or influence a juror's decision

ABA Standards, Jury and Jury Trials, Principle 11 (H)

The Commentary to the principle goes on to further support this high standard for the use of anonymous juries:

> Subdivision H is premised on those core values that uphold public trials and the presumption of innocence.  Open court proceedings serve the critical goals of public education and engendering public trust and confidence in the courts.  The use of anonymous juries erodes the presumption of innocence and makes juries less accountable.  The subdivision recognizes that juror anonymity as default mechanism constitutes a shorthand approach to a complex issue.  Without reasonable grounds to show a genuine problem in a particular case, anonymous juries should not be used, due to the implication of bias they present.

Commentary to Principle 11(H).

Applying the five *Mansoori* factors unequivocally shows that the government has fallen far short in making its case for an anonymous jury.  First, the evidence that the defendants are involved in organized crime is baseless.  Putting aside the fact that Hamas is not an racketerring organization involved in organized crime, the evidence that the defendants have any on-going relationship to Hamas is completely absent from this record.  The Courts have emphasized that a defendant's alleged connection to organized crime must have "some direct relevance to the

5

question of juror fears or safety in the trial at hand, beyond the innuendo that this connection conjures up." *See, e.g., United States v. Vario*, 943 F.2d 236, 241 (2d Cir 1991). As this Circuit in *Mansoori* was careful to point out, adopting the reasoning in *Vario* "something more than the organized crime label is required in order to justify juror anonymity." *Mansoori*, 304 F.3d at 651.

Second, the government's evidence of defendants alleged involvement with individuals associated with Hamas is history - older than 10 years - and there is no evidence that Hamas has ever used force or violence in the United States, let alone to influence a judicial proceeding. Given, at best, the defendant's tenuous past alleged relationship with Hamas, which is clearly not on-going even as alleged in the government's own indictment, it strains credulity to believe that Hamas, which is under constant attack by the Israeli Army in the Occupied Territories, would have any interest in or capacity to improperly influence the jurors in this case to assist the defendants.

Third, there is no evidence that the defendants in the past have attempted to interfere with the judicial processes or witnesses. Certainly, this Court can not accept as true the alleged false interrogatory answer in Count III, nor does it constitute evidence that Mr. Salah or anyone else intends to improperly influence the jury. As the *Mansoori* court stated, "what demonstrates the need for jury protection is not simply the means of intimidation , but some evidence that intimidation is likely." *Id.* at 651; *See also, United States v. Corrao*, 1988 U.S. Dist Lexis2932 at *3 ("The Government simply speculates as to the defendant's likelihood of engaging in jury tampering.")

In *Mansoori*, even given the defendants involvement with the Traveling Vice Lords, a well-armed Chicago street gang dealing in large amounts of drugs, and even with evidence of

threats to a witness, the Seventh Circuit found that "without additional evidence indicating that they were likely to act on that ability and incentive [to threaten jurors], there "was not enough to justify the unusual step of juror anonymity." *Id.* at 651. In this case there is a complete lack of evidence of threats of violence to witnesses, murder of informants, extortion, and bribery of public officials, which justified the use of an anonymous jury in other cases. *See e.g., United States v. DiDmenico* 78 F.3d 294, 297-98 (7th Cir. 1996); *United States v. Crockett*, 979 F.2d 1204, 1206 (7th Cir. 1992) (Court found that there was a "pattern of violence" against potential witnesses); *United States v. Muyat*, 225 F.3d 647 (2d Cir. 2000).

Fourth, while it is true that the defendants face long prison sentences if convicted, that fact alone cannot justify an anonymous jury, since many cases involve serious penalties without resorting to this extraordinary jury selection method. The fact that both defendants have been out on bond for over two years underscores the fact that neither man is dangerous or intends to improperly influence the jury in his case. In almost all cases in which the government has sought an anonymous jury, the defendants have been detained as a danger to the community and/or a risk of flight. Indeed the Seventh Circuit has downplayed the significance of this factor stating that, "the fact that the defendants faced lengthy prison terms if convicted is hardly unusual . . ." *Mansoori*, 304 F.3d at 651.

Finally while there has been and will be publicity surrounding this case, the publicity has usually been limited to the inside pages of the metro newspaper sections and could hardly be characterized as extensive. Certainly, like much of the discovery in this case, the names and other biographical information of the jurors could be designated as "sensitive" and placed under a protective order for counsel and clients eyes only. Thus, the media can easily be prevented

7

from disclosing the names or addresses of any prospective juror.

## CONCLUSION

In this case in particular, the names of the prospective jurors and their place of employment and residence are of critical importance to the defense in making intelligent decisions in selecting the jury. This biographical data provides significant important information in a case in which there is so much hidden potential racial, religious, ethnic and political prejudices. Beyond that, there is no neutral explanation for the special anonymity in this case that can guarantee that any juror might not attribute the secrecy surrounding their basic information to a potential threat from the defendants or their supporters.[2]

Balancing the defendants' right to a full and fair jury selection process and the attendant prejudice by an anonymous jury against the speculative and unsupported showing of improper

influence on the jury, it is clear that this Court must deny the government's motion or grant an

---

[2] Numerous studies of jury deliberations have shown that jurors who believe that a defendant poses a future danger are much more likely to convict, regardless of the evidence, and even are much more likely to choose the death penalty over other options. *See, e.g.*, Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What Do Jurors Think?*, 98 Colum. L. REV 1538, 1559-1560, 1566 (1998) (noting that capital jurors considered future dangerousness to be one of the most influential aggravating factors despite jury instructions that did not list future dangerousness as a permissible aggravating factor); Eisenberg and Wells, *Deadly Confusion: Juror Instructions in Capital Cases*, 79 Cornell L. Rev. 1, 4 (1193) ("Expectations about future dangerousness play a substantial role in juror deliberations.").

evidentiary hearing.


Dated: July 17, 2006                          Respectfully submitted,



                                              s/ Michael E. Deutsch

                                              MICHAEL E. DEUTSCH
                                              People's Law Office
                                              1180 N. Milwaukee Avenue
                                              3rd Floor
                                              Chicago, Illinois 60622
                                              773-235-0070

                                              ROBERT BLOOM
                                              3355 Richmond Boulevard
                                              Oakland, California 94611