IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 03 CR 978 |
| | ) | Hon. Amy J. St. Eve |
| MUHAMMAD HAMID KHALIL SALAH, | ) | |
| a/k/a "Muhammad Abd Al-'Hamid Salah," | ) | |
| a/k/a "Abu Ahmad," and | ) | |
| ABDELHALEEM HASAN ABDELRAZIQ ASHQAR, | ) | |
| a/k/a "Abu Hasan," | ) | |
| a/k/a "Abu Ali Hasan," | ) | |
| a/k/a "Samir" | ) | |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR APPLICATION OF MEASURES TO ENSURE WITNESS SAFETY AT TRIAL**

Now comes the United States of America, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and respectfully submits this reply in support of its motion to this Honorable Court for the entry of an order to provide measures to ensure the protection of witness safety at trial and states as follows.

I.    **Introduction**

In its opening motion, the government set forth in detail the measures it considered appropriate to protect the agents of the Israel Security Agency ("ISA") who will testify at trial. These measures are justified by significant and legitimate concerns regarding the personal safety of ISA witnesses, the safety of their families in Israel, and, further, the preservation of their operational capacities should their true identities, which are classified, be revealed to the public.

Defendants do not and cannot seriously dispute the fact that ISA agents are prized targets for terrorist organizations sympathetic to the Palestinian cause in garnering support within their own communities, undermining the confidence of the Israeli populace in their own government and security agencies, and disrupting Israeli intelligence gathering. Instead, defendants generally claim

the ISA agents are not entitled to such measures because they are torturers.  Indeed, defendant

Ashqar's recently appointed counsel waste no time jumping on the Salah torture bandwagon and

suggest that the ISA agents should not even be allowed entry to the United States based on alleged

human rights violations.  The defendants' continued generalized attacks against a foreign

intelligence agency miss the point.  The issue before the Court and one that is clearly answered in

the affirmative is whether the proposed ISA agent witnesses have a legitimate fear for their safety

and the safety of those close to them as well as their ability to continue to be operational.

## II.    Discussion

### A.    The ISA Agents Should Not Have to Disclose Their Classified True Identity.

Defendant Salah claims failure to disclose the true names of the ISA agents will prejudice

him because he will not be able to investigate the ISA agents' background.  Of course, defendant

Salah does not provide any offer of proof of what he would do to investigate these individuals who

reside in a foreign in a country if he had their names.  Indeed, defendant Salah had the true names

of several proposed Israeli witnesses for the suppression hearing, one of whom testified.  It appears

that Salah did absolutely nothing to investigate these individuals nor, for that matter, United States-

based witnesses who testified at the suppression hearing.  In short, defendant Salah's claim that he

needs the names in order to conduct an overseas investigation rings hollow.[1]

Defendant Ashqar, in his response, cites *Smith v. Illinois*, 390 U.S. 129 (1968), for the

---

[1]    In addition, defendant Salah's and defendant Ashqar's claims that the government has not met its *Giglio* and Jencks obligations with regard to the ISA agents is simply not true.  As the government has represented in Court, the government instructed ISA lawyers, whose credibility the Court has had the opportunity to judge, regarding the government's *Giglio* and Jencks obligations.  Because the personnel files were in Hebrew, the ISA lawyers reviewed the personnel files and provided the results to the government so that the government could meet its *Giglio* and Jencks Act obligations.

proposition that a defendant has a right to a witness' true name and other identifying information in every single case. Ashqar Resp. at 3-4. Defendant Ashqar, however, fails to address the numerous courts that have limited the ruling of *Smith* and noted that *Smith* did not deal with a record in which a witness had a reasonable fear for his safety. In fact, nowhere does defendant Ashqar address the Seventh Circuit's plain language, provided only a year after *Smith* and distinguishing *Smith*, that "where there is a threat to the life of the witness, the right of the defendant to have the witness' true name, address and place of employment is not absolute." *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969); *see United States v. Contreras*, 602 F.3d 1237, 1239-40 (5th Cir. 1979) (where there was reasonable fear that disclosure of DEA agent's home address and frequented locations would endanger him and his family, no error in precluding cross examination as to home address and other background information even though agent was "instrumental in defendant's arrest"*)*; *United States v. Rangel*, 534 F.2d 147 (9th Cir. 1976) (where record showed that witness's life had been threatened and witness and family relocated, no error in permitting witness to testify without divulging true name, address and phone number); *United States v. Ellis*, 468 F.2d 638 (9th Cir. 1972) (affirming district court's decision to prohibit cross-examination on undercover agent's name and address in bench trial where there were "substantial reasons" for withholding the information and the witness's testimony was of marginal significance); *United States v. Baker*, 419 F.2d 83, 87 (2nd Cir. 1969) (finding *Smith* distinguishable because witness in *Baker* was genuinely and reasonably in fear of his safety), *cert. denied* 397 U.S. 976 (1970).

Nor does either defendant attempt to distinguish *United States v. Lonetree*, 35 M.J. 396 (CMA 1992), a United States Court of Military Appeals decision by Judge Sentelle of the U.S. Court of Appeals for the D.C. Circuit that upheld a trial court order prohibiting the defense from learning

the true name of an intelligence officer or conducting cross-examination into the officer's background when the officer testified on the government's behalf in an espionage case. The Court concluded that "the real world setting and environment of John Doe at the time of this trial and of all events about which he testified is better reflected in his pseudonym and in his identification as an intelligence agent than in anything connected with his 'true identity.'" *Lonetree*, 35 M.J. at 410. If alias testimony was appropriate in *Lonetree*, it is certainly appropriate where the testifying ISA witnesses, whom defendants have only known by pseudonym, live in constant fear of kidnapings and death from targeted terrorist attack. *See also United States v. Dumeisi*, No. 03 CR 664, slip op. at 1 (N.D.Ill. Jan. 2, 2004 and Jan. 6, 2004) (Conlon, J.) (former Iraqi intelligence officer witness may testify using pseudonym and in light disguise, and may not be questioned about his current and former addresses; media reports and courtroom sketches shall not describe witness' appearance)

Accordingly, the ISA agents should be permitted to testify using the alias names they have used throughout their entire interaction with defendant Salah in the instant case and the defendants should be barred from asking ISA agents, in front of the jury, questions related to the agents' true names or other identifying information

### B.    The ISA Agents Should Be Permitted to Testify Outside of the View of the Public.

As has been detailed at length, a critical concern for the government and the ISA agents is the protection of their identity, both for their ability to continue covert work as well as their safety and the safety of their families. The government has sought to develop a solution that will maximize the safety of the ISA agents with the strong preference for a public trial. Of course, the safest and most effective method of protecting the ISA agents' identities is to close the courtroom to the public and release transcripts after the agents testify. Such closure is arguably justified under *Waller v.*

*Georgia*, 467 U.S. 39, 43 (1984), which set out a four-part test when a court considers closing a courtroom to the public. *See Brown v. Artuz*, 283 F.2d 492, 501-02 (2nd Cir. 2002) (closing justified to protect safety of undercover officer); *Bowden v. Keane*, 237 F.3d 125, 128 (2nd Cir. 2001) (closing justified where undercover officer can articulate generalized fear for safety, described in "rough terms"); *Brown v. Kuhlmann*, 142 F.3d 529 (2nd Cir. 1998) (undercover officer's safety would be prejudiced by public testimony); *Ayala v. Speckard*, 131 F.3d 62 (2nd Cir. 1997) (en banc) (discussing and applying *Waller* and holding that closure of courtroom during testimony of undercover officers in three trials was justified); *see also Carson v. Fischer*, 421 F.3d 83, 88-91 (2nd Cir. 2005) (finding courtroom properly closed during testimony of confidential informant who feared for his safety); *United States v. Leos-Hermosillo*, No Cr-97-01221 (S.D. Cal.), *aff'd*, 213 F.3d 644, 2000 WL 300967, at *1 (9th Cir. Mar. 22, 2000) (District Court granted motion to exclude public from courtroom during testimony of a confidential informant, which was affirmed by the 9th Circuit in a summary order).

Despite the precedent cited above, there is a less restrictive measure that will avoid ISA agents' appearances being described or their picture taken or sketched, but will also permit public access to the ISA agents' contemporaneous testimony. More particularly, the courtroom in which the agents will testify will be open to the public, but through a contemporaneous audio feed of their testimony to a second courtroom (a screen blocking the public is a less secure and therefore less desirable second option).[2] Ample case law supports the solution of a contemporaneous audio feed

---

[2] Although this procedure will protect witness identity, it does not address the real risk of inadvertent disclosure of classified information by the ISA witnesses. In deference to the preference to open courtrooms, the government is accepting the risk that the ISA witnesses will inadvertently disclose classified information to the public.

from a courtroom in which the public is physically absent. *See United States v. George*, 1992 WL 200027, at \*1-3 (D.D.C. July 29, 1992); *United States v. Lucas*, 932 F.2d 1210, 1217 (8th Cir. 1991); *State v. Suarez*, 867 S.W.2d 583, 586-87 (Mo.Ct.App. 1993); *Okonkwo v. Lacy*, 104 F.3d 21, 26 (2nd Cir. 1997). In fact, each of the cases previously cited permitting full closure of the courtroom under *Wallace* inherently supports the proposition of less restrictive means like those proposed by the government.

In response to the government's proposal and the case law that justifies it, defendants simply state that they have a right to a public trial and no safety measures are justified. Of course, the vast majority of the defendants' trial will be fully open to the public. Indeed, the ISA agent testimony will be open to the public, but with the caveat that the testimony is being provided to the public in a separate courtroom.

As for the interveners, the majority of the case law they cite is inapposite because it deals primarily if not exclusively with the full closure of the courtroom thereby completely barring the public from access to testimony or, in certain instances, evidence. The government has not requested a complete closure of the courtroom. The government has simply requested that the testimony be provided verbally to the public on a contemporaneous basis, thus ensuring an open courtroom with certain measures in place to protect the identities and safety of the testifying ISA witnesses. Further, given the constant efforts being made, including the provision of award money, to identify ISA agents, as well as the actual killings of ISA agents and others working in Israeli intelligence services, interveners' attempt to distinguish *United States v. Lucas*, 932 F.2d 1210 (8th

6

Cir. 1991), falls short of the mark.[3]

The government's proposed solution of an open courtroom receiving a contemporaneous audio feed balances the government's need to provide security for its witnesses along with the defendants' need for a public trial. Accordingly, this protective measure should be granted.[4]

### C.     The ISA Agents Should Be Permitted to Testify in Light Disguise.

There is ample judicial support to permit the ISA agents to testify in light disguise; that is, minimal change in their appearance that prohibits disclosure of their identity while still permitting credibility assessments of their mannerisms and affect (*e.g.* growth of facial hear, clear glasses, change in hairstyles, etc.). *See Morales v. Artuz*, 281 F.3d 55 (2d Cir. 2002); *Dumeisi,* No. 03 CR 664, slip op. at 1 (N.D.Ill. Jan. 2, 2004) (Conlon, J.) (permitting former Iraqi intelligence officer to testify using a light disguise). Again, instead of addressing the case law that supports light disguise,

---

[3]     Footnote three of intervener's brief, in which the interveners suggest that "two small military incursions" have been met by thousands of deaths at the hands of the Israeli military and, therefore, the ISA agents have nothing to "fear from Mr. Salah and Palestinian-American attendees of the trial rather than the other way around," inappropriately attempts to inject the recent military actions in the Middle East into this trial despite the Court's previous admonitions that such actions are unrelated to this case. Further, the interveners' argument actually supports the protections sought by the government. By "two small military incursions," the government presumes interveners are referring to the recent kidnapings of Israeli soldiers by Hamas and Hizballah, which, far from being "small," support the government's argument that Israeli intelligence officers are targeted by terrorist organizations and their identities must be safeguarded. It should also be noted that the government has never suggested a particularized fear of disclosure based on race or ethnicity as intervener's suggest and objects to intervener's characterization. Access to the ISA agent identities by any member of the public sitting in the courtroom could result in disclosure.

[4]     The defense complains a jury instruction will not alleviate prejudice from a closed courtroom. The government disagrees. A jury instruction could easily be provided that notes that the absence of spectators has absolutely nothing to do with the defendants on trial. This instruction would be supported by the fact that the security precautions related to the ISA agents will not be necessary for numerous other witnesses, thus supporting the instruction that the security precautions have nothing to do with the defendants.

the defendants note that applying "heavy latex molds" to a witness' face could make a credibility assessment difficult. Def. Salah Resp. at 7. The government is not suggesting such heavy disguise and such quotes from law review articles do not advance the defendant's arguments.

In short, the need for the witnesses safety, particularly given the fact that websites offer rewards for description of ISA agents, justifies the ISA agent witnesses use of light disguise.[5]

### D.     The Use of Classified Information at Trial.

Defendant Salah's response makes clear he still does not understand the Classified Information Procedures Act, Title 18 App., United States Code, §§ 1-16 ("CIPA"). In fact, CIPA has been appropriately used in this case to protect classified information to avoid defendant Salah's attempt at graymail; that is, the disclosure of classified information that does not help his case but will harm the government thereby making prosecution impossible. *See generally United States v. Pappas*, 94 F.3d 795, 799 (2nd Cir. 1996). To the extent defendant Salah does not like CIPA, he should take his complaint up with Congress, but should not label the Court's appropriate and, indeed, Congressionally-mandated use of CIPA a "judicial farce." Def. Salah Resp. at 12.

Defendant Salah is in possession of a full transcript of the CIPA Section 6 hearing and a redacted transcript that indicates the portions and subject matter of the testimony still classified. CIPA Section 5 specifies the procedure, and the timing of the procedure, by which a defendant can seek to disclose classified information or where the defendant reasonably expects to cause the disclosure of classified information. Defendants are on clear notice of that provision. Further, the

---

[5]     The government does not understand the defense to object to providing private access to the courtroom to the Israeli witnesses as long as the same entrance is provided to defense witnesses. The government leaves to the Court the appropriate manner of entrance to the courtroom for defense witnesses. Likewise, all exhibits should be provided to the Israeli witnesses, for both the government and the defense, through tendering the exhibits to a courtroom security officer.

government is in the process of drafting substitutions that will provide defendant Salah with arguably favorable information elicited during the Section 6 hearing.

As for the Section 4 evidence, the government is in the process of drafting substitutions that will provide defendant Salah with arguably favorable information as may be constitutionally required. *See generally United States v. Mejia*, 448 F.3d 436, 456 (D.C. Cir. 2006) (collecting cases and noting that only classified information "helpful" to the defense need be disclosed or substituted). The government will seek the Court's approval that these substitutions meet the government's discovery obligations before they are provided to the defense.

Once the "helpful" information is substituted as required under CIPA and provided to the defense, there should be no further need for the government to invoke CIPA or the classification privilege at trial, although it is impossible to say with absolute certainty that CIPA will not be needed at trial. The government hopes not to need to invoke CIPA during trial because once the government substitutions are provided to the defense, thus meeting the government's discovery obligations regarding classified material, it will be improper for either the government or defense to attempt to elicit from the ISA witnesses information that the parties know or believe to be classified. The principal is actually fairly simple. The defense will have the benefit of the "helpful" classified information through substitutions. The classified information itself, however, remains classified. Therefore, the classified information should not be disclosed. This is exactly how CIPA is designed to function and has functioned thus far in the instant case. No matter how much defendant Salah may dislike this procedure or consider it a "judicial farce," this is the proper legal way of handling classified information, whether it be testimony or documents.

In short, defendant Salah will get the benefit of the "helpful" classified information.

Thereafter, no information currently classified should be queried into or elicited during trial.

III.     Conclusion

Because they are variously required under United States law, justified by the nature of the matter at issue, and presently constitute the least restrictive means available to balance sensitive national security interests with the constitutional criminal procedural rights of the defendant, the Government respectfully requests that the Court order the implementation of the procedures and safeguards requested herein for the conduct of the trial.

Respectfully submitted,
PATRICK J. FITZGERALD
United States Attorney


By:      s\Reid Schar
JOSEPH FERGUSON
REID SCHAR
CARRIE HAMILTON
Assistant United States Attorneys
219 South Dearborn
Chicago, Illinois  60604
(312) 353-5300

10

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION
FOR APPLICATION OF MEASURES TO ENSURE WITNESS SAFETY AT TRIAL**

were served pursuant to the district court's ECF system as to ECF filers, if any, and were sent by first-class mail on August 21, 2006, to the following non-ECF filers:

William Mofitt
11582 Greenwich Point Road
Reston, VA   20194

s/Reid Schar
JOSEPH FERGUSON
Assistant United States Attorneys
219 South Dearborn
Chicago, Illinois  60604
(312) 353-5300